UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**00-6217**

Case No. _____ Civ –

**MAGISTRATE JUDGE**
**TURNOFF**

FILED by _____ D.C.
INTAKE

FEB 1 4 2000

CLARENCE MADDOX
CLERK    U S DIST CT
S.D. OF FLA.    W.P.B

|   |   |
|---|---|
| HAROLD SAMUEL LANDA, M.D., d/b/a PULMONARY AND INTERNAL MEDICINE CONSULTANTS, P.A. and BROWARD COUNTY MEDICAL ASSOCIATION | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| HUMANA MEDICAL PLAN, INC. a Florida Corporation, HUMANA HEALTH PLAN OF FLORIDA, INC., a Florida Corporation, HUMANA HEALTH INSURANCE COMPANY OF FLORIDA, INC. a Florida Corporation | ) ) ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM IN**
**SUPPORT OF REMOVAL**

Defendants Humana Medical Plan, Inc., Humana Health Plan of Florida, Inc., and

Humana Health Insurance Company of Florida, Inc., by undersigned counsel, respectfully submit

this memorandum in support of the removal of this action originally filed in the Circuit Court of

the Seventeenth Judicial Circuit in Broward County Florida.

**INTRODUCTION**

In spite of its rhetoric and crafty pleading, plaintiffs' complaint is fairly simple. Plaintiffs

allege that the defendants' (the alleged plan administrators and insurers) retrospective cost-

containment procedures are unlawful. Plaintiffs seek that portion of health care insurance benefits allegedly withheld due to these procedures, and ask for prospective, equitable relief that would modify the defendants' administrative procedures and clarify the appropriate level of payments. Such claims and such remedies are at the heart of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. *See In re U.S. Healthcare, Inc.*, 193 F.3d 151, 162 (3rd Cir. 1999) ("As an administrator overseeing an ERISA plan, an HMO will have administrative responsibilities over the elements of the plan, including determining eligibility for benefits, calculating those benefits, disbursing them to the participant, monitoring available funds, and keeping records. ...[C]laims that fall within the essence of the administrator's activities in this regard fall within section 502(a)(1)(B) and are completely preempted."); *see also Varity Corp. v. Howe*, 516 U.S. 489, 498-505 (1996) (broadly defining administrative activities under ERISA).

The true nature of plaintiffs' claims is confirmed by what the complaint does not say. At no point do plaintiffs allege that the challenged administrative procedures affected the quality of the medical care provided in any manner. The distinction between an action that challenges the payment of, administration of, or entitlement to, benefits, and one that challenges the quality of the benefit provided, is critical. While state law claims challenging quality of heath care may not be subject to preemption, state law claims challenging payment, entitlement, or administration issues associated with health care benefits are completely preempted. *See U.S. Healthcare, Inc.*, 193 F.3d at 161-62 (drawing the distinction between "(1) state-law claims directed to the quality of benefits provided, which are not completely preempted, and (2) claims 'that the plan erroneously withheld benefits due' or that seek 'to enforce [plaintiffs'] rights under their respective plans or to clarify their rights to future benefits' which are subject to complete preemption."); *see also Sofo v. Pan-American Life Ins. Co.*, 13 F.3d 239, 241 (7th Cir. 1994) (finding a state-law claim for wrongful rescission was completely preempted by ERISA, because

plaintiff had already received the health care services and was essentially challenging

defendant's failure to reimburse).

## BACKGROUND

On January 19, 2000, plaintiffs Harold Samuel Landa, M.D. (hereinafter "Landa") d/b/a

Pulmonary and Internal Medicine Consultants, P.A., and Broward County Medical Association

("BCMA") filed this complaint against Humana Medical Plan, Inc., Humana Health Plan of

Florida, Inc., and Humana Health Insurance Co. of Florida, Inc.[1] The defendants were served on

January 24, 2000. Plaintiffs' complaint sets forth eight causes of action, including two for

declaratory relief, (Complaint ("Compl.") ¶¶ 30-31, 35-37), two for damages under Florida

statutes, (*id.* ¶¶ 32-34, 38-41), one for civil conspiracy, (*id.* ¶¶ 42-44), one for fraud, (*id.* ¶¶ 45-

49), one for breach of contract, (*id.* ¶¶ 50-53), and one for unjust enrichment. (*Id.* ¶¶ 54-58.)

These eight state law causes of action have one common thread: each relates to a claim for

insurance benefits for the treatment of patients, the majority of whom are likely participants in

employer-sponsored welfare benefit plans that are administered or underwritten by the Humana

defendants and governed by ERISA.

Defendants Humana Medical Plan, Inc. and Humana Health Plan of Florida, Inc., and

Humana Health Insurance Company of Florida, Inc. administer and insure claims on behalf of

employee welfare benefit plans, some of which are subject to regulation by ERISA.

Plaintiff Landa, who does business through Pulmonary and Internal Medicine

Consultants, P.A., is a physician who specializes in Internal Medicine and Pulmonary Critical

Care. (Compl. ¶ 16.) Plaintiff Landa voluntarily entered into, and has continuously ratified, a

---

[1]    Because it is not named as a defendant in the caption of plaintiffs' complaint, Aztec
Medical Systems, Inc. has not properly been joined as a defendant. *Cf. Roderich v. New
Hampshire Hosp.*, 2000 U.S. Dist. LEXIS 1143, at *37 (D.N.H. Jan. 28, 2000) (caption controls
extent to which defendant is included in litigation).

Physician Agreement with Humana pursuant to which he was to provide medical services "to patients insured by the defendants."[2]  (*Id.* ¶¶ 12-14.)  As part of the Agreement, plaintiff Landa agreed not to bill Humana insured patients directly, but rather to receive payment directly from Humana. (*Id.* ¶ 17.)  In addition, Dr. Landa agreed to "accept assignment of benefits made by MEMBERS, as payment in full."  (Physician Agreement ("Agmt"), ¶ 6.)  In conjunction with the relevant employee welfare benefit plans, the Physician Agreement contractually recognizes the assignment of the health plan benefit (the right to reimbursement) to the health care provider – in this case Dr. Landa.  Plaintiff Landa does not challenge the validity of the agreement, its terms, or its procedures.  In fact, plaintiff Landa continuously ratified the agreement and it is still in effect today.

Plaintiff BCMA is an association of Florida physicians. (Compl. ¶ 28.)  It alleges no direct relationship with the Humana defendants and is not suing in its own capacity.  Rather, BCMA is suing in is associational capacity, as a representative of Dr. Landa and the other physicians in Broward County, a number of whom presumably treated many patients under Humana administered and insured employee benefit plans subject to ERISA.  For jurisdictional purposes, BCMA stands in the identical position of Dr. Landa.

Plaintiffs' creative pleading should not obfuscate that at base, plaintiffs' allegations are nothing more than a claim for insurance benefits under Humana-administered and insured group health plans, including employee welfare benefit plans.  All eight causes of action seek either monetary damages in the form of reimbursement for services already provided to Humana-insured patients, (Compl. ¶¶ 32-34, 38-58), or declaratory relief that the remuneration for services provided to such patients should be greater or more expedient.  (Compl. ¶¶ 30-31, 35-37.)  Plaintiffs' request for benefits on behalf of those patients who participate in employee

---

[2]     A copy of Dr. Landa's Physician Agreement is attached at Tab 1.

welfare benefit plans subject to ERISA are completely preempted. Therefore, the complaint is subject to removal.

## DISCUSSION

Any action filed in state court may be removed to federal court under 28 U.S.C. § 1441 if the action is subject to the "original jurisdiction" of the federal district court. Thus, an action may be removed based upon the exercise of diversity jurisdiction, 28 U.S.C § 1332, or federal question jurisdiction. 28 U.S.C. § 1331. As a general rule, federal question jurisdiction is governed by the well-pleaded complaint rule, which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The "complete preemption doctrine," however, is an exception to this general rule. Pursuant to this doctrine, a federal court has jurisdiction where Congress has "so completely pre-empt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). In such cases, courts are required to recharacterize the claim as one arising under federal law for purposes of determining removal jurisdiction even if the complaint attempts to assert only state law claims. *See Kemp v. International Bus. Mach. Corp.*, 109 F.3d 708, 712 (11th Cir. 1997).

ERISA is one of these areas. When ERISA is cited as the jurisdictional basis for removal, as it is here, complete preemption[3] will be found to exist where the plaintiff's state law claim is displaced by ERISA's preemption provision, § 514, 29 U.S.C. § 1144, and falls within ERISA's civil enforcement provision, § 502, 29 U.S.C. § 1132. *See Metropolitan Life Ins. Co.*,

---

[3] The Eleventh Circuit refers to the ERISA preemption that creates federal jurisdiction as either "complete preemption" or "super preemption." *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1329 (11th Cir. 1998); *Butero v. Royal Macabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999) ("federal courts have subject-matter jurisdiction over state-law claims that have been super preempted, and defendants may remove to federal court those actions that contain such claims").

481 U.S. at 64-67 (complete preemption exists because cause of action was preempted by ERISA and fell squarely within § 502); *Butero*, 174 F.3d at 1211-12 ("Superpreemption arises from Congress's creation of a comprehensive remedial scheme in [§ 502] . . ."); *Belasco v. W.K.P. Wilson & Sons, Inc.*, 833 F.2d 277, 282 (11th Cir. 1987) ("ERISA pre-emption converts the related claim into a federal question."). Both requirements are met here, giving this Court subject matter jurisdiction over plaintiffs' claims.

I.    **PLAINTIFFS' COMPLAINT MEETS THE REQUISITE ELEMENTS FOR COMPLETE PREEMPTION AND IS SUBJECT TO REMOVAL ON THE BASIS OF FEDERAL QUESTION JURISDICTION.**

A.    **PLAINTIFFS' CLAIMS "RELATE TO" AN ERISA PLAN**

Plaintiffs' attempt to hide the true nature of their claims by avoiding mention of any specific group health plan is futile. *See, e.g., Franklin v. QHG of Gadsden, Inc.*, 127 F.3d 1024, 1029 (11th Cir. 1997) (finding plaintiffs' claims completely preempted despite their efforts to characterize such claims as state-law claims for fraud and deceit). ERISA incorporates a broad preemption provision, which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . .." 29 U.S.C. § 1144(a). The Supreme Court and the courts of this circuit have consistently construed this provision liberally, recognizing the breadth of preemption Congress intended. *See, e.g., Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987) ("the express pre-emption provisions of ERISA are deliberately expansive"); *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990) (ERISA preemption is "conspicuous for its breadth"); *Reed v. Prudential Ins. Co. of Am.*, 4 F. Supp. 2d 1148, 1151 (M.D. Fla. 1998) ("Congress intended that the words 'relate to' be construed broadly."). A claim based on state law need only have a "connection with" an ERISA plan in order to "relate to" it. *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 129 (1992).

6

There can be no question that plaintiffs' claims "relate to" an ERISA plan. Many of patients treated by Dr. Landa, in respect of whom he now claims benefits, were undoubtedly participants in employee welfare benefit plans subject to ERISA regulation.[4] The same is unquestionably true of the physicians purportedly represented by BCMA. For purposes of determining whether plaintiffs' state law claims "relate to" an ERISA plan, however, only *one* of the countless patients treated by Dr. Landa and or other BCMA-member physicians treated and now seeks reimbursement for need be a member of an ERISA-governed plan.[5]

Regardless of the number of plaintiffs' patients who are covered under ERISA plans, plaintiffs' complaint "relates to" an ERISA plan for the independent reason that the complaint requests prospective relief. The prospective, equitable relief that plaintiffs seek would affect all Humana administered and insured group health plans, including those subject to ERISA. (Compl. ¶ 31 (seeking a declaration that "the practice, policy, and procedures of HUMANA" and the "inadequate, unfair, unreasonable, and costly medical review" violate state law).) An action that challenges the administration of an ERISA plan "relates to" that plan. *See Variety Children's Hosp., Inc. v. Blue Cross/Blue Shield of Florida*, 942 F. Supp. 562, 566 (S.D. Fla. 1996) ("ERISA preempts all state laws that impact on the *administration* of an employee benefit plan." (emphasis added)); *U.S. Healthcare, Inc.*, 193 F.3d at 162 (claims that seek to clarify rights to future benefits are completely preempted).

Claims similar to each of those asserted by plaintiffs here have been found to "relate to" ERISA plans. In *Miami Children's Hospital, Inc. v. Malakoff*, 765 F. Supp. 718, 721 (S.D. Fla. 1991), for example, the court found that a health care provider's claim for payment from a plan

---

[4]    Indeed, "nearly 80% of the workers in this country" receive their health care benefits through plans subject to ERISA. *See* 145 Cong. Rec. H8155-05 (daily ed., Sept. 14, 1999) (statement of Rep. Knollenberg).

[5]    Plaintiffs' causes of action on behalf of the non-ERISA covered patients would be subject to supplemental jurisdiction under 28 U.S.C. § 1367.

insurer, which was based on the insurer's obligation to provide insurance coverage to the participants pursuant to an employee welfare benefit plan, "related to" the plan. Plaintiffs' action is quite similar. (Compl. ¶¶ 50-53 (setting forth breach of contract claim and asserting damages that include unpaid physician's claims).) At least for some of the participants, plaintiff Landa seeks to recover from Humana payments for health care provided pursuant to an employee welfare benefit plan. For those participants, plaintiff Landa's claims "relate to" an ERISA plan.

**B.    PLAINTIFF LANDA'S CLAIMS ARE COVERD BY ERISA'S REMEDIAL SCHEME.**

Because plaintiffs' claims "relate to" an ERISA plan, complete preemption exists and relief is available for those claims under 29 U.S.C. § 1132(a). *See Butero*, 174 F.3d at 1212 ("Here's the rule: ERISA super preemption exists . . . when the 'plaintiff is seeking relief that is available under 29 U.S.C. § 1132(a).'"); *Engelhardt v. Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1353 (11th Cir. 1998) (removal jurisdiction turns on whether the plaintiff is seeking relief available under 29 U.S.C. § 1132(a)).

As either an assignee or a beneficiary seeking to receive payments for health services pursuant to employee benefit plans, plaintiff Landa's claims are within the purview of ERISA § 502. *See* 29 U.S.C. § 1132(a) (providing for federal court jurisdiction over a civil action brought by a participant or beneficiary of an employee benefit plan "to recover benefits due . . . under the terms of . . . [the] plan."). Therefore, plaintiffs' claims are completely preempted.

**1.    *Plaintiffs' Complaint Amounts To A Claim For Benefits Under ERISA And Is Subject To The Remedial Provisions Of § 1132(a).***

Although denominated as a collection of different state law claims, plaintiffs' causes of action are all at base claims for a plan benefit – payment for health services. For example, plaintiff Landa's breach of contract claim seeks compensatory damages in the amount of unpaid physician claims. (Compl. ¶ 53.) Plaintiff's claim for damages under a Florida statute,

8

§ 501.204, alleges that "Dr. LANDA has incurred actual damages, including . . . the failure of HUMANA to pay his claims adequately and timely, . . . and the costs of the inadequate, unfair, unreasonable and costly system of medical records review. (*Id.* ¶ 41.) It is this **payment** for medical services, not the rendition of medical services, that is the benefit provided by the insurer of an employee benefit plan. *See Kennedy v. Deer & Co.*, 514 N.E.2d 171, 173 (Ill. 1987) ("the defendant is not obligated contractually to provide the medical care but only to pay for it."); *Misic v. Building Serv. Employees Health and Welfare Trust*, 789 F.2d 1374, 1377 (9th Cir. 1986) ("Assignment of trust monies to health care providers results in precisely the benefit the trust is designed to provide and the statute is designed to protect."). The Eleventh Circuit has implicitly recognized this point. *See Engelhardt*, 139 F.3d at 1354 (holding that the plaintiff doctor sought relief available under § 1132(a) when he alleged compensatory damages equal to the amount of benefits withheld, and was thus subject to complete preemption); *id.* (classifying a suit challenging an insurer's refusal to **pay** benefits as one encompassed by § 1132(a)'s cause of action for recovery of plan benefits) (emphasis added).

State causes of action that relate to a failure to pay benefits are preempted. *See, e.g., Variety Children's Hosp., Inc. v. Century Med. Health Plan, Inc.*, 57 F.3d 1040, 1042 (11th Cir. 1995) ("[W]here state law claims of fraud and misrepresentation are based upon the failure of a covered plan to pay benefits, the state law claims have a nexus with the ERISA plan and its benefit system" and are therefore preempted); *Jacobs v. Blue Cross and Blue Shield of Iowa*, 835 F. Supp. 1378, 1381 (M.D. Fla. 1993) (recognizing breach of contract claims as preempted by ERISA); *Pilot Life Ins. Co.*, 481 U.S. at 57 (breach of contract claims asserting improper processing of a claim for benefits under an ERISA regulated plan are preempted); *Reed*, 4 F. Supp. 2d at 1153 (declaratory relief action related to coverage under an employee welfare benefit plan was preempted by ERISA); *Engelhardt*, 139 F.3d at 1354 (plaintiff's fraud claim was "at the heart of § 1132(a)" where the plaintiff never sought rescission of the contract, and was, in fact, pursuing contractual benefits).

9

## 2.    *Dr. Landa Has Standing to Sue As An Assignee.*

Virtually every circuit that has addressed the issue of a health care provider's standing to sue pursuant to assignment has concluded that the language of the ERISA statute and the general goals it seeks to accomplish allow such standing. *See, e.g., Hermann Hosp. v. MEBA Med. and Benefits Plan*, 959 F.2d 569 (5th Cir. 1992); *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272 (6th Cir. 1991); *Kennedy v. Connecticut Gen. Life Ins. Co.*, 924 F.2d 698 (7th Cir. 1991); *Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp., Inc.*, 947 F.2d 1341 (8th Cir. 1991); *Misic* 789 F.2d at 1379 (9th Cir. 1986).

This Court has reached the same conclusion. In *Miami Children's Hospital, Inc.*, 765 F. Supp. 718, this Court became the first court in the Eleventh Circuit to address the question whether a provider of medical services could sue an insurer derivatively as an assignee of a beneficiary. *Id.* at 720. Relying on the decisions in both *Misic*, 789 F.2d 1374, and *Kennedy*, 924 F.2d 698, this Court found that the plaintiff hospital, as an assignee of a participant's insurance benefits, had standing to sue under ERISA. *Miami Children's Hosp., Inc.*, 765 F. Supp. at 720; *Cagle v. Bruner*, 921 F. Supp. 726, 735 (M.D. Fla. 1995) ("a provider of medical benefits, as an assignee of benefits, has standing to sue in federal court").

Dr. Landa's Physician Agreement requires him to accept assignment of benefits made by members. *See* Agmt, at ¶ 6 ("PHYSICIAN agrees to accept assignment of benefits made by MEMBERS, as payment in full."); *see also Kennedy*, 924 F.2d at 701 (holding that an insurer's policy that provided for the *possibility* of direct payment through assignment was enough to establish subject matter jurisdiction over a health care provider's suit for non payment). Once again, if only one of the patients Dr. Landa treated over the last nine years assigned his or her right to benefits under an employee benefits plan, then this Court has jurisdiction over plaintiffs' complaint.

ERISA's broad policy goals support a finding of assignee standing. *See Miami Children's Hosp., Inc.*, 765 F. Supp. at 720 ("Allowing an assignment of benefits to a health care provider actually may further Congress' goal of enhancing employees' health and welfare benefit coverage."). Such standing protects beneficiaries by making it unnecessary for health care providers to evaluate the solvency of patients before commencing medical treatment, and by eliminating the necessity for beneficiaries to pay potentially large medical bills and await compensation form the plan. Moreover, assignments permit a trust fund to obtain improved benefits for beneficiaries by bargaining with health care providers for better coverage and lower rates. *Misic*, 789 F.2d at 1377. Finally, if their status as assignee did not entitle them to federal standing against the plan, providers would either have to rely on the beneficiary to maintain an ERISA suit, or they would have to sue the beneficiary. Either alternative would discourage providers from becoming assignees and possibly from helping beneficiaries who were unable to pay them "up-front." *See Hermann Hosp. v. MEBA Med. and Benefits Plan,* 845 F.2d 1286, 1289 n.13 (5th Cir. 1988) ("to deny standing to health care providers as assignees of beneficiaries of ERISA plans might undermine Congress' goal of enhancing employees health and welfare benefit coverage.").

### 3.    *Dr. Landa Has Standing To Sue As A Beneficiary Under ERISA.*

Dr. Landa could have brought his claims directly under § 1132(a) because he qualifies as a beneficiary, both through the terms of the Physician Agreement and by designation from the participants he treated. ERISA broadly defines beneficiary to include "a person designated by a participant, or by the terms of the employee benefit plan, who is or may become entitled to a benefit thereunder." *See* 29 U.S.C. § 1002(8).

Dr. Landa is a beneficiary because the Physician Agreement specifically designates him as the recipient of health plan benefits. *See* Agreement, ¶ 5 ("HUMANA shall pay PHYSICIAN

in accordance with payment arrangement. . ."); *id.* ¶ 9 ("PHYSICIAN hereby agrees that in no event . . . shall PHYSICIAN bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against MEMBERS of HUMANA . . . for Covered Services provided pursuant to this AGREEMENT."). The existence of direct payment from the insurer to Dr. Landa is enough to establish his beneficiary status and, accordingly, subject-matter jurisdiction. *See Kennedy*, 924 F.2d at 701 (holding that an insurer's policy that provided for the *possibility* of direct payment was enough to establish subject matter jurisdiction over a health care provider's suit for non payment).

Further, in choosing to receive medical care from Dr. Landa, and allowing him to seek reimbursement directly from Humana, participants designate Dr. Landa as the beneficiary of the benefits owed them under the terms of the health plans. As such, Dr. Landa's suit for payment for medical services rendered is a beneficiary's request under section 1132(a)(1)(b) for benefits due, and is preempted by § 1132(a).

## CONCLUSION

For the reasons stated above, this Court should find that it has subject matter jurisdiction over plaintiffs' claims.

Respectfully submitted this 14th day of February, 2000.

_____

Peter A. Sachs
Jones, Foster, Johnston & Stubbs, P.A.
505 South Flagler Drive, Suite 1100
P.O. Box 3475
West Palm Beach, Florida 33402-3475
(561) 659-3000

Of Counsel:

O'MELVENY & MYERS LLP
555 13th Street, N.W.
Suite 500 West
Washington, D.C. 20004
(202) 383-5300

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail

to Brian D. Boyle, Esq., Brian P. Brooks, Esq., O'Melveny & Myers L.L.P., 555 13th Street, N.W.,

Washington, D.C. 20004; Walter G. Campbell, Esquire, Krupnick, Campbell, Malone, Roselli, Buser,

Slama, Hancock, McNelis, Liberman & McKee, P.A., 700 Southeast Third Avenue, Suite 100,

Courthouse Law Plaza Fort Lauderdale, FL 33316 on February 14, 2000.

JONES, FOSTER, JOHNSTON & STUBBS, P.A.
Attorneys for Defendant
505 South Flagler Drive, Suite 1100
Post Office Box 3475
West Palm Beach, Florida 33402-3475

By: _____
           Peter A. Sachs
           Florida Bar No. 349062

N:\PAS\Landa\certofserv.wpd





RECYCLED PAPER

# SPECIALTY
# PHYSICIAN AGREEMENT

## COVER SHEET

PHYSICIAN: _____ Harold Landa, MD _____

ADDRESS: _____ 7351 W. OAkland Park Blvd. Suite 106 _____

CITY: Lauderhill _____  COUNTY: Broward _____

STATE: Florida _____  ZIP CODE: 33319 _____

CONTACT PERSON: _____ Fran Grazioso _____  PHONE: (305) 572-7515

ALL OF THE FOLLOWING DOCUMENTS ARE INCORPORATED BY REFERENCE AND ARE MADE A PART OF THIS AGREEMENT.

    1. APPLICATION

    2. COVER SHEET

    3. PHYSICIAN AGREEMENT

    4. ATTACHMENTS A. B. C. D. E

    5. PHYSICIAN'S ADMINISTRATION MANUAL

IMPORTANT: INDICATE ALL SECTIONS OR ATTACHMENTS WHICH HAVE BEEN AMENDED

        Attachment B-1

        B. 15, 16, 17

# PHYSICIAN AGREEMENT

## 1. PARTIES

This PHYSICIAN Agreement ("AGREEMENT") is entered into by and between:

a. The party designated on the cover Sheet as "PHYSICIAN" and, if said party is a corporation or partnership, the Principals of said party, all of whom are listed on the attached Ownership Disclosure Statement (Attachment A). All of said persons and entities are collectively referred to herein as "PHYSICIAN"; AND

b. HUMANA MEDICAL PLAN, INC. and HUMANA HEALTH PLAN OF FLORIDA, INC. (Florida health maintenance organizations) and HUMANA HEALTH INSURANCE COMPANY OF FLORIDA, INC. (a Florida insurance company) and their affiliates. All of said companies are severally referred to in this AGREEMENT as "HUMANA."

## 2. SCOPE OF THE AGREEMENT

This AGREEMENT sets forth the rights, responsibilities, terms and conditions governing PHYSICIAN'S status as a Participating Physician in certain health care networks established by HUMANA and PHYSICIAN'S service to designated covered individuals ("MEMBERS") by contracts issued or, administered by HUMANA or other third party payors which HUMANA has contracted with to extend the discounts under this AGREEMENT. This AGREEMENT applies only to those health care benefits contracts and to those MEMBERS designated by HUMANA.

The joinder of the three companies under the designation "HUMANA" shall not be construed as imposing joint responsibility or cross-guarantees. All rights and responsibilities arising in respect to individual MEMBERS shall be applicable to only the company which issued the contract covering the respective MEMBER and may not be imposed on or enforced on the other company.

## 3. MEDICAL SERVICES TO BE PROVIDED

PHYSICIAN agrees to provide or arrange for covered health care services for MEMBERS in accordance with Attachment B.

## 4. USE OF PARTICIPATING PROVIDERS

PHYSICIAN shall admit or refer MEMBERS for covered services only to providers designated or specifically approved by HUMANA.

## 5. BILLING PROCEDURES

PHYSICIAN shall use the most current procedural terminology (CPT) codes on all forms. PHYSICIAN will abide by all CPT codes for rules and guidelines that are applicable (including inclusive procedure codes).

## 6. PHYSICIAN FEES

HUMANA shall pay PHYSICIAN in accordance with payment arrangement outlined in Attachment C. PHYSICIAN

shall collect any copayment amount applicable to the services provided. The payment from HUMANA plus the payments owed by MEMBERS pursuant to their contract ("COPAYMENTS") shall be accepted by PHYSICIAN as payment in full for all Covered Services. If a health care benefits contract permits any assignment or benefits to be made by MEMBERS to physicians, then PHYSICIAN agrees to accept assignment of benefits made by MEMBERS, as payment in full.

## 7. COORDINATION OF BENEFITS

Covered services provided to each MEMBER are subject to coordination with other benefits payable or paid to or on behalf of the MEMBER. PHYSICIAN shall accept payment from HUMANA, plus any COPAYMENTS, as payment in full for all Covered Services provided to MEMBERS, and PHYSICIAN hereby assigns to HUMANA all PHYSICIAN'S rights to any other benefits that may be payable in respect to a MEMBER.

PHYSICIAN agrees to use PHYSICIAN'S best efforts to determine the availability of other benefits and to obtain any documentation required to facilitate HUMANA'S collection of such other benefits.

## 8. POLICIES AND PROCEDURES

PHYSICIAN agrees to abide by all quality assurance, utilization review, credentialing and other policies and procedures established and revised by HUMANA from time to time. Such policies and procedures are set out in the Physician's Administration Manual ("MANUAL"). PHYSICIAN shall be notified of any revisions to the policies and procedures and they shall become binding upon PHYSICIAN thirty (30) days after HUMANA has notified PHYSICIAN. Any revisions affecting PHYSICIAN shall not be discriminatory and shall apply to all physicians similarly situated.

## 9. NO LIABILITY TO MEMBERS FOR CHARGES

PHYSICIAN hereby agrees that in no event, including, but not limited to non-payment by HUMANA, HUMANA'S insolvency or breach of this AGREEMENT, shall PHYSICIAN bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against MEMBERS of HUMANA or persons other than HUMANA acting on their behalf for Covered Services provided pursuant to this AGREEMENT. This provision shall not prohibit collection of any COPAYMENTS in accordance with the terms of this AGREEMENT.

PHYSICIAN further agrees that (1) this provision shall survive the termination of this AGREEMENT regardless of the cause giving rise to termination and shall be construed to be for the benefit of the MEMBER. (2) This provision supersedes any oral or written contrary Agreement now existing

or hereafter entered into between PHYSICIAN and MEMBER or persons acting on their behalf, and (3) this provision shall apply to all employees and subcontractors of PHYSICIAN, and PHYSICIAN shall obtain from such persons specific Agreement to this provision.

Any modification, addition, or deletion to Article 9 shall become effective on a date no later than fifteen (15) days after the Commissioner of Insurance has received written notice of such proposed changes.

## 10. CREDENTIALING

Participation under this AGREEMENT by PHYSICIAN, any any PHYSICIAN employee or subcontractor, is subject to the satisfaction and maintenance, in HUMANA'S sole judgment of all credentialing standards adopted under the policies and procedures set out in the MANUAL.

## 11. INSURANCE

PHYSICIAN agrees to maintain, at no expense to HUMANA, such policies of comprehensive and general liability, professional liability and worker's compensation coverage, with such carriers and in such amounts as HUMANA may reasonably approve, insuring PHYSICIAN, its members, employees, agents and subcontractors, (as applicable) against any claim or claims for damages arising as a result of injury to property or person, including death, occasioned directly or indirectly in connection with the performance of medical services contemplated by this AGREEMENT and/or the maintenance of PHYSICIAN'S facilities and equipment. Upon request, PHYSICIAN shall provide HUMANA with evidence of said coverage, and PHYSICIAN shall require the carrier(s) to provide HUMANA with notice of any cancellations or modifications. This clause shall survive for a period of time following the termination of this AGREEMENT not less than the Statute of Limitations applicable to personal injury in this State.

## 12. MALPRACTICE CLAIMS

PHYSICIANS shall within forty-eight (48) hours or such lessor period of time as required by the applicable statute of this State notify HUMANA in writing of notice of any MEMBER claim alleging malpractice or the occurrence of any incident which is required to be reported under such statute.

## 13. STANDARDS OF PROFESSIONAL PRACTICE

PHYSICIAN agrees to provide MEMBERS with medical services which are within the normal scope of PHYSICIAN'S medical practice. These services shall be made available to MEMBERS without discrimination and in the same manner as provided to PHYSICIAN'S other patients. PHYSICIAN agrees to provide medical services to MEMBERS in accordance with the prevailing practices and standards of the profession and community.

## 14. MEDICAL RECORDS

Unless otherwise provided in this AGREEMENT, PHYSICIAN shall maintain and retain records relating to MEMBERS in such form as required by law and accepted medical practice. HUMANA or any federal or State regulatory agency, as permitted by law, may obtain copies and have access to any medical, administrative or financial record of PHYSICIAN related to covered services provided by PHYSICIAN to any MEMBER upon request. This clause shall survive any termination of this AGREEMENT.

## 15. USE OF PHYSICIAN'S NAME

HUMANA shall have the right to include the following information in any and all marketing and administrative materials it distributes: PHYSICIAN name, telephone number, address, hours of operation, and type of practice or specialty, and the names of all physicians providing care at PHYSICIAN'S facility.

## 16. DURATION OF AGREEMENT

This AGREEMENT shall be effective only if and when HUMANA has separately notified PHYSICIAN of its acceptance of PHYSICIAN's application. Duration of Agreement shall be defined as outlined in Attachment D.

## 17. GRIEVANCE PROCEDURE

PHYSICIAN agrees to cooperate and participate with HUMANA in its grievance procedure, and PHYSICIAN will comply with all final determinations made through the grievance procedure.

## 18. ASSIGNMENT AND DELEGATION

This AGREEMENT is entered into to secure the personal services of PHYSICIAN. Accordingly PHYSICIAN may not assign or delegate all or any part of this AGREEMENT without the prior-written consent of HUMANA. HUMANA may assign this AGREEMENT to any purchaser of all or a substantial portion of the book to business in respect of which this AGREEMENT is executed or to any affiliate of HUMANA, provided that the assignee agrees to assume HUMANA'S obligations under this AGREEMENT.

## 19. ENTIRE AGREEMENT

This AGREEMENT, including the Application, Cover Sheet, MANUAL, the Attachments hereto and the documents incorporated herein, constitutes the entire AGREEMENT between HUMANA and PHYSICIAN with respect to the subject matter hereof, and its supersedes any other medical services AGREEMENT, oral or written, between HUMANA and PHYSICIAN.

## 20. RELATIONSHIP

Nothing contained in this AGREEMENT shall be deemed to create any relationship between PHYSICIAN and HUMANA

other than that of independent contractors. This AGREEMENT is not intended for the benefit of any third parties. Notice to, or consent from, any third party, including a MEMBER or other physician, shall not be required in order to make any termination or modification of this HUMANA effective.

21. WAIVER

Waiver, whether expressed or implied, of any breach of any provision of this AGREEMENT shall not be deemed to be a waiver of any other provision or a waiver of any subsequent breach of the same provision.

22. LITIGATION

In the event of any litigation arising out of or related to this AGREEMENT, the prevailing party shall be entitled to recover from the other party its reasonable attorney fees and cost of litigation including, without limitation, any expert witness fees.

23. SEVERABILITY

If any part of this AGREEMENT should be determined to be invalid, unenforceable, or contrary to law or professional ethics, that part shall be reformed, if possible, to conform to law and ethics, and if reformation is not possible, that part shall be deleted, and the other parts of this AGREEMENT shall remain fully effective.

24. RIGHT TO INJUNCTION

In the event of an actual or threatened breach of Articles 8, 13, 16 or 17 of this AGREEMENT, HUMANA shall be entitled to an injunction enforcing this AGREEMENT in addition to all other remedies available at law.

25. OFF-SET

PHYSICIAN authorizes HUMANA to deduct monies that may otherwise be due and payable to PHYSICIAN from any outstanding monies that PHYSICIAN may, for any reason, owe to HUMANA.

26. NOTICES

Any notice, except notices of changes in policies and procedures pursuant to Article 8, required or desired to be given under this AGREEMENT shall be given in writing and shall be delivered in person or mailed by Certified or Registered Mail, postage pre-paid return receipt requested, to the other party at the address set forth below their respective signatures to this AGREEMENT. Except as provided in Article 8, any such notice shall be effective upon receipt. Unless a notice specifically limits its scope, notice to any one party included in the term "PHYSICIAN" or "HUMANA" shall constitute notice to all parties included in the respective term.

27. INCORPORATION OF ATTACHMENTS

Attachments A,B,C,D, and E, are made a part of this AGREEMENT.

IN WITNESS WHEREOF, the parties have executed this AGREEMENT as of this __8th__ day of __January__ 199 _1_ . It is provided, however, that HUMANA'S execution of this AGREEMENT shall not constitute the acceptance required to make this AGREEMENT effective pursuant to Article 10.

HUMANA

HUMANA MEDICAL PLAN, INC.

BY: _____

TITLE: _____ ASSOCIATE EXECUTIVE DIRECTOR _____

HUMANA HEALTH PLAN OF FLORIDA, INC.

BY: _____

TITLE: _____ ASSOCIATE EXECUTIVE DIRECTOR _____

HUMANA HEALTH INSURANCE COMPANY OF FLORIDA, INC.

BY: _____

TITLE: ___ ASSOCIATE EXECUTIVE DIRECTOR ___

Address for Notice:

Humana Medical Plan, Inc.
Network Development Department
1505 N.W. 167 Street
Miami, Florida 33169

PHYSICIAN

BY: X_____

TITLE: _____

PRINCIPALS OF PHYSICIAN

_____

_____

_____

_____

Address for Notice:

Harold Landa, MD

7351 W. Oakland Park Blvd. Ste 106

Lauderhill, Florida 33319

# ATTACHMENT A

## OWNERSHIP DISCLOSURE FORM

PHYSICIAN/PROVIDER (Corporation) _____ Harold Landa, MD _____

(Must be identical to the name shown on the Cover Sheet)

STATUS:

_____ Sole Proprietorship

_____ Professional Association

_____ Partnership

_____ Corporation

List names and addresses of all Principals and indicate percent ownership, if applicable.

("Principal" means any shareholder, officer, director, partners, joint venturer, or anyone else having an ownership in or managerial control over Physician. Attach additional sheets if necessary.)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

# ATTACHMENT B

### PHYSICIAN Responsibilities

PHYSICIAN shall provide consultation of medical services in the specialty of _____Pulmonary Medicine_____
to MEMBERS which are referred to PHYSICIAN from those contracted medical centers identified in Exhibit C-2 to Attachment C., or in future Letters of Agreement.

PHYSICIAN is responsible twenty-four (24) hours a day, seven (7) days a week for providing specialty services as defined in Exhibit B-1.

The PHYSICIAN shall provide to HUMANA a description of the PHYSICIAN'S arrangements for urgent and emergency care and service coverage in the event of PHYSICIAN unavailability due to vacation, illness, or after hours and will assure that the physician providing coverage will provide services under the same terms and conditions and in compliance with all provisions of the PHYSICIAN'S Agreement with HUMANA. PHYSICIAN will pay the covering physician, if PHYSICIAN is receiving a monthly capitation from the center to which the MEMBER belongs.

PHYSICIAN will provide the referring Primary Care Physician with copies of consultations, operative tests and/or procedural reports within ten (10) days after the visit.

The PHYSICIAN shall schedule routine appointments within three (3) weeks from the time of phone call. Urgent appointments within twenty-four (24) hours from the time of phone call; emergent appointments the same day as phone call.

# EXHIBIT B-1

## Services to be Provided

I.  Diagnosis and treatment of all medical illnesses within PULMONARY and with the scope of the PHYSICIAN'S medical practice as follows:

A.  Pulmonary Function Tests

B.  Special Procedures
    1.  Chest Imaging
    2.  Thoracentesis
    3.  Closed Pleural Biopsy
    4.  Closed Tube Thoracotomy
    5.  Thoracoscopy
    6.  Bronchoscopy
    7.  Bronchial Lavage
    8.  Mediastinoscopy
    9.  Mediastinotomy
    10. Scalene Node Biopsy
    11. Lung Biopsy
    12. Tracheal Aspiration
    13. Establishment of an Emergency Airway
    14. Resporatory Physical Therapy
    15. *Right Heart Catheterization*        16. *Arterial line*
C.  Pulmonary Insufficiency:                  17. *Central venous line placement*

    Acute Respiratory Failure

D.  Adult Respiratory Distress Syndrome

E.  Airways Obstruction
    1.  Bronchial Asthma
    2.  Acute Bronchitis
    3.  Chronic Obstructive Pulmonary Disease

F.  Bronchiectasis

G.  Atelectasis

H.  Pulmonary Embolism

I.  Lung Abscess

J.  Occupational Lung Disease
    1.  Diseases due to inorganic (mineral) dusts
        a. Fibrogenic Dust Disease
        b. Benign Pneumoconioses
    2.  Disease due to organic dust
        a. Occupational Asthma
        b. Byssinosis
    3.  Diseases due to irritant gases and chemicals
        a. Acute exposure
        b. Chronic exposure

K.  Hypersensitivity Diseases of the lungs
    1.  Hypersensitivity Pneumonitis
    2.  The Eosinophilic Pneumonias
    3.  Pulmonary Wegener's Granulomatosis

L.  Goodpasture's Syndrome

M.  Idiopathic Infiltrative Disease of the lungs
    1.  Histiocytosis X
    2.  Idiopathic Pulmonary Hemosiderosis

N.  Pulmonary Alveolar Protheinosis

O.  Pleural Disorders
    Pleurisy

P.  Tumors of the lung

# ATTACHMENT C

### PHYSICIAN PAYMENT ARRANGEMENT

HUMANA agrees to pay PHYSICIAN for covered services provided to MEMBERS according to the FEE SCHEDULE as outlined in Exhibit C-1. The exceptions to this payment method are those MEMBERS who have been assigned to a contracted medical center listed in Exhibit C-2. PHYSICIAN agrees to accept as payment in full for covered services provided to these MEMBERS a monthly capitation amount set forth in Exhibit C-3.

All capitation payments shall be mailed by the fifteenth (15th) day of each month.

* The amount in C-3 also includes compensation for medical supplies, medications, support staff and facilities and equipment used in providing medical services to MEMBERS. Reimbursement in exception to the amount set forth in C-3 shall be listed in Exhibit C-1.

  Physician agrees to abide by the surgical payment guidelines in the reimbursement section of the MANUAL, if he provides surgery for MEMBERS which HUMANA will pay according to the FEE SCHEDULE in Exhibit C-1.

# EXHIBIT C-1

## FEE-FOR-SERVICE-RATES

PHYSICIAN shall be compensated for covered medical services as follows:

75% of Medicare Allowable at the 75th percentile.

Area:  Broward County

1. HUMANA P.P.O and other non-assigned Members

As of the Effective Date, for those Members who are under health benefit or health care contracts offered, underwritten, or administered by Humana, where Members are not assigned to PROVIDER, PROVIDER agrees to provide all physician services offered by PROVIDER. PROVIDER agrees to accept as payment in full HUMANA'S FEE SCHEDULE. Such payment shall consist of:

a. Any co-payments, co-insurance and deductibles specified by Health Care Benefits Contract of Member and

b. Payments due by HUMANA which, in conjunction with member payments named above, will total the agreed upon payment of HUMANA'S FEE SCHEDULE.

SPEC HMO PPO · · 00

# EXHIBIT C-2

Set forth below is the list of contracted medical centers as to whose MEMBERS a capitation payment shall be made This Exhibit may be amended from time to time by HUMANA by adding or deleting centers.

NOT APPLICABLE

# EXHIBIT C-3

## CAPITATION RATES

PHYSICIAN shall be compensated for medical services provided to MEMBERS under this AGREEMENT as follows:

NOT APPLICABLE

# ATTACHMENT D

### DURATION OF AGREEMENT

This AGREEMENT shall continue until terminated by either party giving the other party written notice of termination at least sixty (60) days prior to the effective date of termination. This contract may be terminated immediately upon written notice for material breach. However, upon termination, PHYSICIAN agrees to provide covered medical services to any MEMBER hospitalized on the date of termination and HUMANA agrees to pay such covered medical services based on HUMANA'S fee-for-service method as outlined in Attachment C until MEMBER is discharged.

Compliance with Florida Statutes – As required under Florida Statute Section 641.234, as amended, effective October 1, 1988, if the Department of Insurance has information and belief that this AGREEMENT requires Humana Medical Plan, Inc. and/or Humana Health Plan of Florida, Inc. ("HUMANA ") to pay a fee which is unreasonably high in relation to the services provided, after review of this AGREEMENT the department may order HUMANA to cancel this AGREEMENT if it determines that the fees to be paid by HUMANA are so unreasonably high as compared with similar contracts entered into by HUMANA or as compared with similar contracts entered into by other health maintenance organizations in similar circumstances, such that this AGREEMENT is detrimental to the subscribers, stockholders, investors, or creditors of HUMANA. The issuance of such an order by the Florida Department of Insurance will not affect the termination of the entire AGREEMENT which shall remain in full force and effect with respect to Humana Health Insurance Company of Florida, Inc. and product lines contemplated in the AGREEMENT to which this Amendment is made a part.

As required under Florida Statute Section 641.315 as amended effective October 1, 1988, PHYSICIAN shall provide thirty (30) days advance written notice to HUMANA at the address listed in the "Notices" section of this AGREEMENT, and to the Department of Insurance, Bureau of Allied Lines, Room 637 Larson Building, 200 East Gaines Street, Tallahassee, Florida 32399-0300, before canceling this AGREEMENT with HUMANA for any reason. Nonpayment for goods or services rendered by PHYSICIAN to HUMANA or any of its MEMBERS shall not be a valid reason or avoiding such 30-day advance notice of cancellation. Upon receipt by HUMANA of a 30-day cancellation notice, HUMANA may, if requested by the PHYSICIAN, terminate the contract in less than thirty (30) days if HUMANA is not financially impaired or solvent.

HUMANA and PHYSICIAN hereby acknowledge and agree that the provisions of the preceding paragraph do not relieve PHYSICIAN of any of its other obligations under this AGREEMENT that are not inconsistent with the foregoing, including without limitation any obligation PHYSICIAN has to provide more than thirty (30) days notice of cancellation of this AGREEMENT, to HUMANA.

Any change (including any addition and/or deletion) to any provision or provisions of this AGREEMENT that is required by duly enacted federal or Florida legislation, or by a regulation or rule finally issued by a regulatory agency pursuant to such legislation, rule or regulation, will be deemed to be part of this AGREEMENT without further action required to be taken by either party to amend this AGREEMENT to affect such change or changes, for as long as such legislation, regulation or rule is in effect.

# ATTACHMENT E

### LIST OF PHYSICIAN ASSOCIATES

The following PHYSICIANS are associated with PHYSICIAN'S practice:

Name: ___Harold Landa, MD_____ Telephone: (305 ) _572-7515____

Address: ___7351 W. Oakland Park Blvd Suite 106, Lauderhill, Florida 33319___

Hospitals at which PHYSICIAN has privileges:

___Humana Bennett, Florida Medical Center, Coral Springs Medical Center,___

___N.W. Regional_____

Name: _____ Telephone: ( ___ ) _____

Address: _____

Hospitals at which PHYSICIAN has privileges:

_____

_____

Name: _____ Telephone: ( ___ ) _____

Address: _____

Hospitals at which PHYSICIAN has privileges:

_____

_____

Name: _____ Telephone: ( ___ ) _____

Address: _____

Hospitals at which PHYSICIAN has privileges:

_____

_____

(Attach for each PHYSICIAN a Florida license, DEA, Board Status, Malpractice Insurance Certificate, Medicare Provider Number, and E.C.F.M.G., if applicable.)

## PHYSICIAN AMENDMENT

**THIS AMENDMENT** is entered into by and between Humana Medical Plan, Inc. (a health maintenance organization) and Humana Health Insurance Company of Florida, Inc. (a Florida insurance company) and Humana Insurance Company and Employers Health Insurance Company (insurance companies) and their affiliates (hereinafter referred to as **"Humana"**) and the undersigned physician, or physician group, or independent practice association, or physician practice management organization, as applicable, and where applicable any employed and/or subcontracted and/or independently contracted health care providers and/or health care professionals of the undersigned physician, or physician group, or independent practice association, or physician practice management organization, as applicable (hereinafter collectively referred to as **"Physician"**).

### WITNESSETH

**WHEREAS,** Humana and Physician entered into a provider participation agreement (hereinafter the **"Agreement"**) and pursuant to which Physician agreed to provide and/or arrange for the provision of services to Humana Members at negotiated rates; and

**WHEREAS,** Humana and Physician desire to amend the Agreement to include the following provisions solely as they relate to the Medicare lines of business:

**A:**  *Conflict of Terms.*  Humana and Physician acknowledge and agree that in the event of any conflict between the terms and conditions of the Agreement and this Amendment, the terms and conditions of this Amendment shall control as it relates to the Medicare lines of business.

**B:**  *Licensure/Certification/Registration/Accreditation.* Physician shall maintain for the term of the Agreement, and any renewal terms thereafter, such licensure, certification, registration, and/or accreditation where applicable, as required by federal and/or state law, rule or regulation and in accordance with Humana's policies and procedures.

**C:**  *Medicare Compliance.* Physician shall comply with and is subject to all applicable Medicare program rules and regulations as implemented and as amended by the Health Care Financing Administration ("HCFA"), including without limitation Humana's and federal and state regulatory agencies' rights to audit Physician's operations, books, records and other documentation related to Physician's obligations under the Agreement, as well as all other federal and state laws, rules and regulations applicable to individuals and entities receiving federal funds, including without limitation Title VI of The Civil Rights Act of 1964, The Age Discrimination Act of 1975, The Americans With Disabilities Act and The Rehabilitation Act of 1973. The parties acknowledge and agree that payment from Humana for services rendered to Humana Medicare Members is derived, in whole or in part, from federal funds received by Humana from HCFA.

Physician hereby represents that Physician and all employees, subcontractors and/or independent contractors of Physician providing and/or who will provide services under the Agreement, including without limitation health care, utilization review, medical social work and/or administrative services, each maintains full participation status in the federal Medicare program, and/or is not excluded from participation in the federal Medicare program.

In order to ensure compliance under the Agreement and this Amendment, Physician acknowledges and agrees to retain all contracts, books, documents, papers and other records related to the provision of services to Humana Medicare Members and/or as

related to Physician's obligations under the Agreement for a period of not less than six (6) years from: (I) each successive December 31; or (II) the end of the contract period between Humana and HCFA; or (III) from the date of completion of any audit, whichever is later.

Physician acknowledges and agrees to cooperate with the activities and/or requests of any independent quality review and improvement organization utilized by and/or under contract with Humana as related to the provision of services to Medicare Members.

D:    *Humana Participating Provider.* Physician acknowledges and agrees that health care providers, including without limitation, physicians and other providers of medical services rendering medical services to Humana Members shall be subject to Humana's credentialing process prior to receiving status as a Humana Participating Physician.

E:    *Humana Policies and Procedures.* Physician agrees to abide by all quality assurance, quality improvement, accreditation, risk management, utilization review, credentialing, recredentialing, fiscal and other administrative policies and procedures established and revised by Humana from time to time. Physician shall be notified of any revisions to the policies and procedures and they shall become binding upon Physician thirty (30) days, or such lesser period of time as required by a federal or state regulatory agency, after Humana has notified Physician. Any revisions affecting Physician shall not be discriminatory and shall apply to all Participating Providers similarly situated.

Physician agrees to cooperate with Humana's implementation of its health risk assessment program.

F:    *Patient Communications.* The parties acknowledge and agree that nothing contained in the Agreement or in this Amendment is intended to interfere with or hinder communications between health care provider(s) and Members regarding patient treatment. Physician will discuss with Members their health status and all medical care and treatment options which Physician and/or the Member's treating physician deems clinically necessary and appropriate, regardless of any coverage or payment determination(s) made or to be made by Humana.

G:    *Claims Processing/Prompt Payment.* Humana shall process claims for Covered Services rendered to Members and shall make payments to Physician on a timely basis using Humana's normal claims processing policies, procedures and guidelines and in accordance with applicable federal and state laws, rules and regulations regarding the timeliness of claims payments. Accordingly, Humana will promptly approve or deny completed claims submitted for payment in accordance with an initial determination by Humana or an appeal of a denied claim. For purposes of this section, a claim is approved or denied "promptly" if it is approved or denied within the time provided for by HCFA and any "prompt payment" statute of Florida.

In the event that Humana has delegated all or any part of the claims payment process to Physician under the terms and conditions of the Agreement, Physician shall comply with all federal and state laws, rules and regulations regarding the timeliness of claims payments to which Humana is subject, including without limitation any time frames, notice and/or penalties relating to payment provided for by HCFA and any "prompt payment" statute of Florida.

H:    *Emergency and Urgently Needed Services.* Humana will pay for emergency and urgently needed services for covered Members, which services are rendered by Physician as follows:

(I)    Any medical screening examination or other evaluation required by state or federal law, rule or regulation which is necessary to determine whether an emergency medical condition exists which will be provided to a covered Member in the emergency department of a hospital;

(II)    Medically Necessary emergency and urgently needed services, including treatment and stabilization of an emergency medical condition; and

(III)    Services originating in a hospital emergency department following treatment and stabilization of an emergency medical condition as provided for by Humana.

Physician will contact Humana for pre-authorization of post-stabilization care. Humana will approve or deny coverage of post-stabilization care as requested by the treating physician within the time appropriate to the circumstances relating to the delivery of the services and the condition of the patient, but in no case to exceed one (1) hour.

I:    _Encounter Data._    In the event that Physician is reimbursed for Covered Services on a capitated basis, and no claims for services are submitted to Humana at the time of service, Physician agrees to provide Humana accurate and complete information ("Encounter Data") regarding the provision of Covered Services for Members in the form of a complete HCFA 1500 and/or UB92 form, or their respective successor form(s) as required by HCFA, or such other format as is mutually agreed upon by both parties. Encounter Data shall include, at a minimum, Member identification and demographic information, Physician and/or treating health care provider and/or health care professional, as applicable, tax identification number, date of service, all applicable CPT-4 and ICD-9 codes, and where applicable billed charges.

Physician acknowledges and agrees that such Encounter Data shall be provided to Humana on a monthly basis on or before the last day of each month for encounters occurring in the immediately preceding month. In the event Physician fails to provide, or arrange for the provision of, the Encounter Data by the date specified above, and upon Humana's notice to Physician of such failure, Physician shall have thirty (30) days from the date of said notice to develop a corrective action plan acceptable to Humana to ensure compliance with the timely submission of the Encounter Data. In the event the corrective action plan is unacceptable to Humana, or the corrective action plan fails to correct the problem within sixty (60) days of implementation of the corrective action plan, Humana, at its sole discretion, may: (I) withhold Physician's subsequent payments; or (II) pend such payments until such Encounter Data is submitted to Humana in an acceptable form; or (III) terminate this Agreement upon sixty (60) days written notice to Physician.

On an annual basis and at other times upon request, Physician further acknowledges and agrees to provide Humana and/or HCFA a certification as to the accuracy, completeness and truthfulness of the Encounter Data submitted to Humana and/or HCFA.

J:    _Member Hold Harmless._    Physician hereby agrees that in no event, including, but not limited to nonpayment by Humana, Humana's insolvency or breach of this Agreement, shall Physician bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against Members of Humana or persons other than Humana acting on their behalf for Covered Services provided pursuant to this Agreement. This provision shall not prohibit collection from Member of any non-covered

service amounts and/or Copayments in accordance with the terms of the agreement between Humana and the Member and with the terms of this Agreement.

Physician agrees that in the event of Humana's insolvency or other cessation of operations, benefits to Members will continue for the period for which premium has been paid and benefits to Members confined in an inpatient facility on the date of insolvency or other cessation of operations will continue until discharge.



Physician further agrees that: (I) this provision shall survive the termination of this Agreement regardless of the cause giving rise to termination and shall be construed to be for the benefit of the Member; (II) this provision supersedes any oral or written contrary agreement now existing or hereafter entered into between Physician and Member or persons acting on their behalf; and (III) this provision shall apply to all employees and subcontractors of Physician, and Physician shall obtain specific agreement to this provision from such persons.

Any modification, addition, or deletion to this Section J shall not become effective until after the Commissioner of Insurance has given Humana written notice of approval of such proposed changes, or such changes are deemed approved in accordance with State laws.

K:     *Medically Necessary Services.* Nothing contained herein is intended by Humana to be a financial incentive or payment that directly or indirectly acts as an inducement for Physician to limit Medically Necessary services.

L:     *Subcontracting.*   Physician agrees that in the event he/she/it employs and/or subcontracts with physicians or other licensed health care providers and/or health care professionals to be covered under the Agreement, such employee and/or subcontractor of Physician shall be subject to all of the terms and conditions of the Agreement including but not limited to the following:

Physician represents and warrants that it is authorized to negotiate terms and conditions of provider agreements and further to execute such agreements for and on behalf of itself and any employees and subcontractors.

Physician shall provide directly, or through appropriate arrangement with physicians and other licensed health care professionals and/or providers, medical services for Members. It is understood and agreed that said Physician shall maintain written agreements with the Physician's physicians, and other licensed health care professionals and/or providers of medical care, where applicable, in a form comparable to, and consistent with, the terms and conditions established in the Agreement and this Amendment, and in a form approved by Humana.   A sample copy of the agreement between Physician and physicians and other licensed health care professionals and/or providers in effect at the time of the signing of the Agreement, and/or this Amendment, as applicable, is attached as **Exhibit A,** which hereby is incorporated by reference and made a part of the Agreement and this Amendment.   In the event of a conflict between the language of the downstream provider agreements and the Agreement and/or this Amendment, the language in the Agreement and/or this Amendment shall control.   Physician agrees to notify Humana of any material change(s) to the aforementioned agreements at least thirty (30) days prior to implementing such change(s), during which period, Humana may object to the change(s).   Humana's notice of objection shall not preclude Physician's implementation of such change(s), but Physician agrees that any such change(s) shall not be contrary to, in violation of, or inconsistent with the terms of the Agreement and/or this Amendment.   In the event Humana notifies Physician of its

objection, both parties agree to make a good faith effort to resolve such dispute in a timely manner.

Physician shall have, for the term of this Agreement, agreements with licensed providers of medical services that: (I) shall be in writing and on contract forms approved by Humana; and (II) shall include terms and conditions which comply with all applicable requirements for provider agreements under state and federal laws, rules and regulations; and (III) shall appoint Humana as the Physician's authorized agent for the payment of claims for Covered Services rendered to Humana Members submitted by such licensed providers; and (IV) shall contain provisions for holding Humana harmless from and against any and all disputes between such licensed providers and Humana concerning the adjudication and the amount of the payment of the claims to the extent Humana relies on Physician's adjudication of such claims submitted for Covered Services rendered to Humana Members. In addition, from and after the Effective Date hereof, agreements with independent contractor physicians of Physician shall contain a provision to extend automatically at Humana's election the terms of such agreements to Humana in the event that the Agreement terminates for any reason for the lesser of the remaining term of such agreements or one (1) year.

M:    *Physician Incentive Plans.*  Upon request, Physician agrees to disclose to Humana within a reasonable time period not to exceed thirty (30) days, or such lesser period of time required for Humana to comply with all applicable state and federal laws, rules and regulations, from such request, the terms and conditions of any payment arrangement that constitutes a physician incentive plan as defined HCFA and/or any state or federal law, between Physician and physicians.  Such disclosure shall be in the form of a certification, or other form as required by HCFA, by Physician and shall identify, at a minimum: (I) whether services not furnished by the physician(s) are included; (II) the type of incentive plan, including the amount, identified as a percentage, of any withhold or bonus; (III) the amount and type of any stop-loss coverage provided for or required of the physicians; and (IV) the physician(s) patient panel size, broken down by total physician(s) panel and individual physician panel size, by the type of insurance coverage (i.e. Commercial HMO, Medicare HMO and Medicaid HMO).

N:    *Termination.*   Before terminating the Agreement, or any individual health care professional providing services to Humana Members under the Agreement, Humana shall provide a written explanation to the Physician, or the individual health care professional, as applicable, of the reason(s) for termination and shall comply with all relevant regulations promulgated by HCFA.

To the extent the Agreement contains a provision for the termination of the Agreement without cause, the parties acknowledge and agree that any termination of the Agreement without cause requires at least sixty (60) days' prior written notice, or such period of time as set out in the Agreement, whichever is longer, to each other.

O:    *Advisory Review of Termination.*  In accordance with HCFA rules, regulations and guidelines, individual physicians, as applicable, upon written request and before the effective date of termination of such individual physician from participation under the Agreement, will be entitled to an advisory panel review of such termination.  The advisory panel will be appointed by Humana. This provision shall not apply in cases where there is: (I) imminent harm or the threat of imminent harm to a Humana Member's health, safety or welfare; or (II) action taken by a state medical, dental or other professional licensing board, or other governmental agency that effectively impairs the individual physician's ability to practice medicine; or (III) fraud or other malfeasance. The decision of the advisory panel must be considered but is not binding upon Humana.

where there is: (I) imminent harm or the threat of imminent harm to a Humana Member's health, safety or welfare; or (II) action taken by a state medical, dental or other professional licensing board, or other governmental agency that effectively impairs the individual physician's ability to practice medicine; or (III) fraud or other malfeasance. The decision of the advisory panel must be considered but is not binding upon Humana. Humana shall provide the individual physician upon written request, a copy of the recommendation of the advisory panel and Humana's final determination. Notwithstanding anything to the contrary in this Section O, in the event that Florida law, rule or regulation contains provisions specifically providing for a substantially similar advisory panel review of terminations of individual physicians from participation in a health maintenance organization's provider delivery network(s), and to the extent such state law, rule or regulation is not preempted by and/or is not inconsistent with HCFA rules and regulations, such state law, rule or regulation regarding advisory panel reviews of individual physician terminations shall control.

P:    *Delegation of Services.*    In the event that Humana delegated certain identified administrative activity(s) to Physician under the terms and conditions of the Agreement, Physician acknowledges and agrees that any sub-delegation of the noted administrative activity(s) by Physician requires the prior written approval of Humana.    Physician represents and warrants that the terms and conditions of any agreements with employed and/or subcontracted physicians and/or other health care providers and/or health care professionals of Physician to perform services under the Agreement and/or this Amendment contain terms and conditions similar to those contained in the Agreement and/or this Amendment.    Notwithstanding anything to the contrary in the Agreement and/or in this Amendment, and in order to ensure Humana's compliance with its contract with HCFA, Humana will monitor Physician's performance of any delegated administrative activity(s) on an ongoing basis and hereby retains the right to modify, suspend or revoke such delegated administrative activity(s) in the event Humana and/or HCFA determines, in their discretion, that Physician is not meeting or has failed to meet its obligations under the Agreement and/or this Amendment, related to such delegated administrative activity(s). Physician acknowledges and agrees that in event of any conflict between the terms and conditions of Physician's subcontracts and those contained in the Agreement and/or this Amendment as they relate to any delegation of administrative activity(s), the terms and conditions of the Agreement and/or this Amendment shall control.    *Humana shall not amend physicians billing-codes in any fashion*

Except as specifically amended hereby, the terms and conditions of the Agreement remain the same.

The parties have the authority necessary to bind all of the entities identified herein and have executed this Amendment to be effective as of **January 1, 1999.**

| **Humana** | **Physician** |
|---|---|
| By: _(signature)_ | By: _(signature)_ |
| Print Name: **Tom Wyss** | Print Name: _LANDA_ |
| Title: **Executive Director** | Title: _MD_ |
| Date: **July 27, 1999** | Date: _7/29/41_ |

Contract: 02963
Fac Name: Harold S. Landa MD

**EXHIBIT A**

**SAMPLE COPY OF PHYSICIAN DOWNSTREAM PROVIDER AGREEMENT(S)**

SEE ATTACHED.

## PHYSICIAN AMENDMENT

THIS AMENDMENT is entered into by and between _____ HUMANA MEDICAL PLAN, INC.; HUMANA HEALTH PLAN OF FLORIDA, INC., HUMANA HEALTH INSURANCE COMPANY OF FLORIDA, INC. and HUMANA INSURANCE COMPANY (hereinafter "HUMANA") and *Harold Landa, MD* (hereinafter "PHYSICIAN").

### WITNESSETH

WHEREAS, HUMANA and PHYSICIAN entered into a Participation Agreement (hereinafter "Agreement") pursuant to which PHYSICIAN agreed to provide Services to HUMANA Members at negotiated rates; and

WHEREAS, the Agreement between HUMANA and PHYSICIAN was effective as of *12-1-91* ; and

WHEREAS, HUMANA and PHYSICIAN desire to amend the Agreement as follows:

A.    <u>Scope of the Agreement</u> provision, the first sentence is modified to read as follows:

This Agreement sets for the rights, responsibilities, terms and conditions governing PHYSICIAN's, and all employees of PHYSICIAN required to be credentialed under HUMANA's policies and procedures, status as a Participating Physician in certain health care networks established by HUMANA and PHYSICIAN's service to covered individuals designated by HUMANA ("Members"), including but not limited to those individuals covered under HUMANA's Commercial Plans, Medicare HMO Plans, and other plans, by contracts issued or administered by HUMANA, or where HUMANA administers the provider network for another third party payor issuing and administering the contract.

B.    <u>No Liability to Members</u> provision is amended to read as follows:

The second paragraph is moved into position as the third paragraph. The third paragraph is moved into position as the fourth paragraph. Insert new second paragraph as follows;

**Second Paragraph**: PHYSICIAN agrees that in the event of the HMO's insolvency or other cessation of operations, benefits to Members will continue through the period for which premium has been paid and benefits to Members confined in an inpatient facility on the date of insolvency or other cessation of operations will continue until their discharge.

**Fourth Paragraph**: Any modification, addition or deletion to the provisions of this provision shall not become effective until after the Commissioner of Insurance has given HUMANA written notice of approval of such proposed changes, or such changes are deemed approved in accordance with state laws.

C.    <u>Insurance</u> provision, the second sentence is modified to read as follows:

Upon request, PHYSICIAN shall provide HUMANA with evidence of said coverage, and PHYSICIAN shall require the carrier(s) to provide HUMANA with ten (10) days prior notice of any cancellations or modifications.

D.    <u>Standards of Professional Practice</u>, the second sentence is modified to read as follows:

These services shall be made available in the same manner as provided to PHYSICIAN's other patients. PHYSICIAN will not discriminate against any Member on the basis of healthcare benefit plans, membership in an HMO, source of payment, sex, age, race, color, religion, origin, health status or handicap in the provision of medical services under the Agreement.

Except as specifically amended hereby, the terms and conditions of the Agreement remain the same.

The parties have executed the Amendment to be effective <u>10/1/95</u>.

PHYSICIAN:

By: _____
Title: _____
Date: _____

HUMANA MEDICAL PLAN, INC.
HUMANA HEALTH PLAN OF FLORIDA, INC.
HUMANA HEALTH INSURANCE COMPANY OF
FLORIDA, INC. and
HUMANA INSURANCE COMPANY

By: _____
Title:    <u>Executive Director</u>
Date:    <u>10/1/95</u>

a:physamen/adddsk/10/10/95

Harold Landa, MD
7351 W. Oakland Park Blvd.
Suite 106
Lauderhill, Fl 33319

HUMANA SPN LOG #  ___2963(REPLACING PPO#5301)___

MONTH ENTERED: ___OCTOBER/91___

SPECIALTY: ___PULMONARY MEDICINE___

CONTRACT TYPE:
TO  __X__  OPT 50 _____
PPO _____  HMP _____
HBP _____  ANC _____
       OTHER _____

### SPECIALTY NETWORK CONTRACT FORM

BILLING NAME: SAME

CONTRACT NAME: HAROLD LANDA, MD.

EFFECTIVE DATE: 12/01/91          COUNTY: BROWARD

FEDERAL TAX ID #: 65-0154329

HOSPITAL PRIVILEGES:

1.     CONTRACT: HUMANA HOSPITAL BENNETT, CORAL SPRINGS MEDICAL CENTER AND
                 N.W. REGIONAL HOSPITAL.
2.  NON-CONTACT:

CENTER SPECIFICS:

CAPITATION RATE:      MEDICARE:           COMMERCIAL:

FEE-FOR-SERVICE: 75% OF MEDICARE ALLOWABLE AT THE 75th PERCENTILE - AREA
                 BROWARD COUNTY.

OFFICE ADDRESS(ES): 7351 W. OAKLAND PARK BLVD., SUITE 106, LAUDERHILL, FL  33319


TELEPHONE NUMBER(S): (305)572-7515

CONTACT: FRAN GRAZIOSO

NEGOTIATED BY: ___DONNA IMBRIGIOTTA___     APPROVED BY: _____

_____

### PHYSICIAN ASSOCIATES: