UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

Case No: 00-6217-CIV-Graham/Turnoff

HAROLD SAMUEL LANDA, M.D.
d/b/a PULMONARY AND INTERNAL
MEDICINE CONSULTANTS, P.A.
and BROWARD COUNTY MEDICAL
ASSOCIATION,

        Plaintiffs,

v.

HUMANA MEDICAL PLAN, INC., a
Florida corporation; HUMANA HEALTH PLAN
OF FLORIDA, INC., a Florida corporation,
HUMANA HEALTH INSURANCE COMPANY
OF FLORIDA, INC., a Florida corporation,

        Defendants.
_____/



**PLAINTIFFS' MOTION FOR REMAND AND
MEMORANDUM OF LAW IN SUPPORT THEREOF**

PLAINTIFFS, HAROLD SAMUEL LANDA, M.D. d/b/a PULMONARY AND INTERNAL MEDICINE CONSULTANTS, P.A. (DR. LANDA) and BROWARD COUNTY MEDICAL ASSOCIATION (BCMA), by and through their undersigned attorneys, hereby file this Motion for Remand and Memorandum of Law in support thereof and state as follow:

    **I.    INTRODUCTION**

The Defendants, HUMANA MEDICAL PLAN, INC. (HUMANA MEDICAL PLAN), HUMANA HEALTH PLAN OF FLORIDA, INC. (HUMANA HEALTH PLAN) and HUMANA HEALTH INSURANCE OF FLORIDA, INC. (HUMANA HEALTH INSURANCE OF

FLORIDA) hereinafter referred to jointly as HUMANA, have removed this action from the Circuit Court for the Seventeenth Judicial Circuit, in and for Broward County, arguing that Plaintiffs' causes of action are preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. Sections 1001-1461 (ERISA). However, Plaintiffs' complaint does not allege causes of action which arise under ERISA or otherwise relate to an ERISA plan. Accordingly, removal of this case and its companion action, <u>Seth Cutler, M. D., et al. v. Humana Medical Plan, Inc., et al.</u> was improper and the case should be remanded for lack of federal jurisdiction.

### A. *Plaintiffs' causes of action.*

On January 19, 2000, Plaintiffs filed a Complaint in state court containing the following state common law and statutory causes of action:

1. Count I:    LANDA and BCMA's declaratory claim pursuant to Florida's Health Maintenance Organization Act.

2. Count II:    LANDA's claim against Defendant, HUMANA, for violation of Florida Statute §641.3801.

3. Count III:    LANDA's declaratory claim against HUMANA to halt automatic "down coding" in violation of Florida Statute §501.204.

4. Count IV:    LANDA's claim for damages pursuant to Florida Statute §501.204.

5. Count V:    LANDA's claim for civil conspiracy against HUMANA.

6. Count VI:    LANDA's claim for fraud.

7. Count VII:    LANDA's claim for breach of contract against HUMANA.

8. Count VIII:    LANDA's claim for unjust enrichment.

The essence of Plaintiffs' claim is that Defendant, HUMANA, has systematically

and automatically denied, delayed and reduced payments due and owing under contracts hereinafter referred to as "Provider Agreement") which Defendant, HUMANA, entered into with Plaintiff, DR. LANDA, in order to procure medical goods and services from the Plaintiff. The Provider Agreement entered into by and between Plaintiff and the Defendant is similar if not identical to Provider Agreements which Defendant enters into on a nationwide basis with other health care providers. A copy of the Provider Agreement entered into by DR. LANDA and Defendant is attached hereto as Exhibit A. As part of this agreement, HUMANA agreed to reimburse the Plaintiff for his professional services and fees pursuant to a fee schedule which was part of the Provider Agreement. In exchange, DR. LANDA, agreed not to bill the HUMANA insured patients.

Defendant, HUMANA, breached this agreement by engaging in a practice known as "downcoding". More specifically, Plaintiff, DR. LANDA, would present a bill to HUMANA which included a billing code in accordance with the Current Procedural Terminology (CPT) Handbook. Rather than pay the Plaintiff, DR. LANDA, according to the appropriate billing code as presented, the Defendant, HUMANA, would instead unjustifiably downcode the request thus reimbursing the doctor at a lower rate. To make matters worse, when DR. LANDA, would object to the downcoding, HUMANA, would supposedly have the medical records reviewed by an independent outside company to verify the coding. However, the outside company is not independent but instead has an interest in supporting the downcoding.

Moreover, in order to obtain the review, DR. LANDA is obligated to make copies of the medical records of the patient and forward them to HUMANA which results in an additional unreimbursed expense and delay on his part in order to obtain any

reimbursement from HUMANA. The purpose and effect of this medical review process is to discourage physicians including DR. LANDA from objecting to the automatic downcoding due to its high cost relative to the amount of reimbursement potentially available.

The complaint does not allege any right other then those granted under the Provider Agreement between HUMANA and the Plaintiff. The complaint does not seek any recovery based upon any contract between HUMANA and its insured. Neither does the complaint seek any recovery based upon any assignment of any rights from HUMANA's insured to the Plaintiff. The statutory and common law causes of action are completely unrelated to any relationship which might exist between HUMANA and its insureds. Instead the entire complaint arises purely out of the relationship between DR. LANDA and HUMANA.

### B. Removal

On February 14, 2000, Defendants removed this action to the United States District Court for the Southern District of Florida. The Removal Petition alleges that the Federal Court has original federal jurisdiction over this case because Plaintiffs' claims are preempted by ERISA § 502, (29 U.S.C. § 1132(a)(1)(B)).

Remand is sought, pursuant to 28 U.S.C. § 1447(c), in that Plaintiffs' claims are not preempted by ERISA § 502 ,(29 U.S.C. § 1132(a)(1)(B)). There is a presumption against ERISA-preemption. Ward v. Alternative Health Delivery Sys. Inc;, 55 F.Supp.2d 694 (1999). Further, a removal petition must be strictly construed, with all doubts resolved against removal. Her Majesty The Queen v. City of Detroit, 874 F.2d 332, 339 (6th Cir. 1989).

Plaintiffs have not stated any federal question on the face of their Complaint, nor are they seeking claims or rights arising under ERISA or any other laws of the United States. Therefore, the only mechanism for removal is for Defendants to characterize Plaintiffs' state common law and statutory causes of action as equivalent to an ERISA civil enforcement actions under ERISA § 502, (29 U.S.C. § 1132(a)(1)(B)).

Plaintiffs are not subject to preemption and removal under ERISA § 502, (29 U.S.C. § 1132 (a)(1)(B)), because Plaintiffs do <u>NOT</u> seek to claim benefits or rights pursuant to or arising out of employee welfare benefit plans, funds or programs established under or maintained pursuant to ERISA, 29 U.S.C. § 1001 et seq. Rather, Plaintiffs are pursuing claims or rights arising under the Provider Agreements that they entered into with Defendants. Such Provider Agreements are **independent contracts** and are unrelated to any employee welfare benefit plans, funds or programs established and/or maintained pursuant to ERISA.

Under the Provider Agreements, Defendants must pay Plaintiffs directly for medical goods and services that Plaintiffs rendered to Defendants' Plan Members. Plaintiffs do not contract to receive payments "pursuant to employee benefit plans," rather Plaintiffs contract to provide medical services to Defendants' members and to be paid directly by Defendants pursuant to the terms and conditions set forth in the Provider Agreements. Therefore, Plaintiffs are not seeking recovery of a "plan benefit" rather they are seeking damages for Defendants' breach of independent Provider Agreements.

## II. **LEGAL STANDARDS**

### A. *Preemption and Removal*

There are two kinds of "preemption" which can occur under ERISA--"ordinary preemption" and "complete preemption." Tovey v. Prudential Ins. Co. of America, 42 F. Supp.2d 919, 922 (1999). Only "complete preemption" under ERISA, as opposed to "ordinary preemption," authorizes removal of a state court action to federal court. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The doctrine of "complete preemption" is an exception to the "well-pleaded" complaint rule. Id. The US Supreme Court ,in Metropolitan Life Ins. Co., recognized this narrow exception to the "well-pleaded" complaint rule for causes of action involving "complete preemption." Id. This exception is narrowly limited, in the ERISA context, to state common law or statutory claims which are equivalent to ERISA civil enforcement actions governed by ERISA § 502, (29 U.S.C. § 1132(a)(1)(B)).

"Ordinary preemption" under ERISA is simply a defense which may be raised to state common law and statutory causes of action. ERISA § 514 (29 U.S.C. § 1144(a)). As a defense, the preemptive scope of ERISA does not present any original federal question on the face of the Plaintiffs' complaint, and therefore does not authorize removal to federal court. Tovey, 42 F. Supp.2d at 922. (Citing Metropolitan Life Insurance Company, 481 U.S. at 63).

The instant case is not removable to federal court under ERISA § 514, (29 U.S.C. § 1144(a)), because that section may only be raised as a defense to Plaintiffs' state common law and statutory claims, and as a defense it does not authorize removal. Rather, the defense is properly determined by the state court judge.

The instant action was only properly removed if the state common law and statutory claims are preempted by the civil enforcement provision of ERISA § 502, (29 U.S.C. § 1132(a)(1)(B)).

### B.  ERISA Statutory Provisions

The ERISA civil enforcement provision, ERISA § 502, 29 U.S.C. § 1132 (a)(1)(B), provides the vehicle for ERISA plan participants or beneficiaries to recover benefits under an employee benefit plan. ERISA § 502, 29 U.S.C. § 1132(a)(1)(B) provides that persons are powered to bring a civil action:

> 1.   As a participant or beneficiary;
>
> (B)   To recover benefits due to them under the terms of their plan, to enforce their rights under the terms of the plan, or to clarify their right to future benefits under the terms of the plan.

## II. ARGUMENT
### A. There is no record evidence that any of DR. LANDA's patients whose bills were downcoded by HUMANA are participants or beneficiaries of an ERISA plan.

The first glaring error in Defendants' removal petition is the failure to identify a single HUMANA insured whose bill was downcoded by HUMANA who is an ERISA plan participant or beneficiary. In fact, in their Memorandum of Law in support of removal, Defendants admit that ERISA participants or beneficiaries are only "likely" to be involved. As indicated above, there is a presumption against ERISA preemption. A removal petition must be strictly construed, with all doubts resolved against removal. Until there is record evidence that ERISA plans are even involved, any removal petition is completely premature. Moreover, even assuming ERISA plan participants bills were affected by HUMANA's downcoding, DR. LANDA's claims are still not governed by ERISA, because

7

DR. LANDA's claims are based upon his contract with HUMANA, not any plan participant or beneficiary's relationship with HUMANA.

**B. The Provider Agreement is a third party contract, and it is independent and distinct from any contracts between Defendants and their plan members.**

Contractual obligations which an insurance company enters into, for the purchase of goods and services, are separate contractual relationships which are independent from the contract between the insurance company and their policyholders, despite the fact that the two contracts may refer to each other. <u>Memorial Hospital for Cancer and Allied Diseases v. Empire Blue Cross and Blue Shield</u>, 1994 W.L. 132151(S.D.N.Y. 1994).

The United States Supreme Court has established that contractual obligations between an insurer and a third party for the provision of goods and services should <u>not</u> be identified with any contracts between the insurer and its insured. <u>Group Life & Health Insurance Company, etc. et al. v. Royal Drug Company, etc., et al.</u>, 40 U.S. 205, 99 S.Ct. 1067 (1979). In <u>Royal</u>, the United States Supreme Court explained the distinction between the insurance company's obligations under its contracts with its insureds, and its obligations under its contracts with third parties for the provisions of goods and services as follows:

> "The fallacy of the petitioners' position is that they confuse the obligation
> of Blue Cross Blue Shield under its insurance policies, which insure
> against the risk that policyholders will be unable to pay for prescription
> drugs during the period of coverage, and the agreements between Blue
> Shield and the participating pharmacies, which serve only to minimize the
> cost Blue Shield incurs in fulfilling its under- writing obligations. The

8

benefit promised to Blue Shield policy holders is that their premiums will cover the cost of prescription drugs except for a $2.00 charge for each prescription. So long as that promise is kept, policyholders are basically unconcerned with arrangements made between Blue Shield and participating pharmacies.... the pharmacy agreements are thus legally indistinguishable from countless other business arrangements that may be made by insurance companies to keep their costs low thereby also keeping low the levels of premiums charged to their policy holders . . . suppose the insurance company should acquire the chain of drug stores in order to lower still further its cost of meeting its obligations to its policy holders. Such an acquisition would surely not be the "business of insurance"(Citation omitted)... at the most , the petitioners have demonstrated that the pharmacy agreements result in cost savings to Blue Shield which may be reflected in lower premiums if the cost savings are passed on to policyholders. But in that sense, every business decision made by an insurance company has some impact on its reliability, its rate making, and its status as a reliable insurer. The manager of an insurance company is not different from the manager of any enterprise with the responsibility to minimize cost and maximize profits."

Similarly, the Provider Agreement in the instant case must not be confused with the obligations of the Defendants under their separate insurance policies with their insureds. The Provider Agreements serve to minimize the cost to the Defendants in fulfilling their underwriting obligations. Furthermore, the Provider Agreements ensure

9

that Defendants will be able to fulfill their obligations to provide medical goods and services to their plan members, by making available a network of physicians and other medical service providers.

The claims asserted in the instant action are indistinguishable from other "lawsuits against ERISA plans for run of the mill state law claims such as unpaid rent, failure to pay creditors, or even torts committed by ERISA plans," all of which involve claims brought by non-ERISA entities and are not within the scope of ERISA preemption. Mackey v. Lanier Collections Agency and Service, Inc. 486 U.S. 825, 831-32, 108 S.Ct. 2182, 2186, 100 L. Ed.2d 836 (1988). Courts have held that the scope of ERISA preemption is neither all encompassing nor unlimited. Memorial Hospital System v. Northbrook Life Insurance Company, 904 F.2d 236, 250 (5th Cir.1990). ERISA preemption does not create a fully insulated legal world that excludes insurance companies from claims to enforce independent contracts, which are not related to ERISA-regulated employee benefits plans.

The Eleventh Circuit has recognized that state law claims brought by third party health care providers, as opposed to participants or beneficiaries under a plan, too tenuously affect an ERISA plan to be preempted. Lordmann Enterprises, Inc. v. Equicor Inc., 32 F.3d. 1529 (11th Cir.1994); Variety Children's Hospital, Inc. v. Blue Cross/Blue Shield of Florida, 942 F.Supp. 562 (S.D. Fla.1996). In Variety Children's Hospital, the hospital sought to recover against Blue Cross/Blue Shield under an estoppel claim for medical care provided to an ERISA participant. Judge Moore found that that claim was not preempted by ERISA stating as follows:

The issue is whether Variety's promissory estoppel claim is preempted by ERISA; specifically whether Variety's state law claim relates to the Plan. As stated above, Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. §1144(a). Whether a state law relates to an ERISA plan requires a determination of whether the state law "has an connection with or reference to such a plan." The mere mention of an ERISA plan in a complaint is not, in and of itself, sufficient, to warrant a finding that the state law relates to a plan.

Although a state law may have a connection to an ERISA plan, its relation may be "too tenuous, remote, or peripheral in manner to warrant a finding that the law relates to a plan." If a state law "does not affect the structure, administration, or the type of benefits provided by an ERISA plan, the mere fact that the [law] has some economic impact on the plan does not require that [law] be invalidated"...

Thus, the critical question in the Variety case *sub judice* is whether Variety brings its promissory estoppel claim as a beneficiary under the plan or as a third-party health care provider. Noting that Count II of Variety's amended complaint, similar to the <u>Memorial Hospital</u> plaintiff's complaint, contains no mention that Variety is bringing this claim as an assignee of benefits, the Court finds that Variety seeks to invoke the doctrine of promissory estoppel in its independent status as a third party health care provider. Accordingly, the Court finds that Count II of Variety's amended complaint does not relate to an ERISA plan and, accordingly, is not preempted. (citations omitted).

<u>Id.</u> 942 F.Supp 566-568

In <u>Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.</u>, 187 F.3d 1045 (9th Cir. 1999), health care providers asserted claims for breach of Provider Agreements. The insurance company alleged that the providers' claims were "claims for benefits" subject to ERISA's civil enforcement provision. <u>Id</u>. The 9th Circuit held that the providers' claims arose from the providers agreements, and that the providers' claims were not preempted by ERISA because they did not involve a claim for benefits under the plan. <u>Id</u>. The court distinguished claims made by healthcare providers in their status as "assignee" of a plan member's benefit, and the non-

derivative claims of health care providers under independent provider agreements. Id. The Court found that the providers' claims, which arose from the terms of their provider agreements, were separate and enforceable independent rights which could not be asserted by their patient-assignors, and hence were not claims for benefits under the terms of an ERISA plan. Id. at 1050.

In Pritt v. Blue Cross and Blue Shield of West Virginia, Inc., 699 F.Supp. 81 (S.D. W.Va. 1988), a physician brought an action in state court alleging that the insurance company breached the provider agreement between physician and insurer by refusing to make payments for services that the physician provided to patients insured by the insurance company. The defendant contended that plaintiff was "a beneficiary" by virtue of the provider agreement, and that his right to reimbursement was essentially a claim for a benefit under the plan. Id. at 84. The court found that "Plaintiff does not bring this action to recover benefits assigned to him by participants or beneficiaries of an ERISA covered plan. Rather, **Plaintiffs allege that Defendants breached the terms of the provider contract. This fact, coupled with the fact that the law regards Provider Agreements as direct purchases of services, leads the court to the conclusion that contract law should govern disputes relating to the Provider Agreements, and not ERISA.**" Id. (emphasis added)

The instant case is factually similar to both the Pritt and the Anesthesia Care Associates Medical Group Inc. cases. Both of those courts construed provider agreements to be *independent contracts for the direct purchase of services, and therefore outside the scope of ERISA preemption*. To deem such provider agreements within the scope of ERISA, would essentially void and nullify the provider agreements,

because providers would be without a remedy for the insurance company's breach of such agreements. If providers are without a remedy for the breach of provider agreements, providers will be less inclined to enter into such meaningless agreements in the future. Perhaps providers will even be less inclined to provide medical services to members.

The Defendants have benefited from their ability to enter into Provider Agreements with medical service providers. The Provider Agreements enable Defendants to procure medical goods and services for their members at a substantially decreased cost. It is unjust at this juncture to allow Defendants to circumvent the payment provisions provided in the Provider Agreements, and to sidestep enforcement of contractual obligations that they freely entered into. The Defendants drafted the Provider Agreements and should be responsible for fulfilling their obligations set forth under such Agreements. If the Defendants are released from liability for breach of the Provider Agreements, it would be tantamount to a judicial sanction of a further "fraud" against physicians--the fraud of inducing them to provide medical services to Defendants' members under the guise of a valid and enforceable contract. The Provider Agreements would be entered into with Defendants never intending to abide by the contractual obligations contained therein, rather intending to raise the ERISA shield if ever required to fulfill their obligations thereunder.

**B.** ***The only document which needs to be interpreted to establish Plaintiffs' claims is the provider agreement, the employee benefit plan itself need not be reviewed or interpreted.***

In removing this action, Defendants mis-characterizes Plaintiffs' claims for relief under the Provider Agreement as a claims for benefits pursuant to an employee benefit

plan. In the instant action, Plaintiffs' claims are only tangentially related to any given employee benefit plan. It is not the employee benefit plan that authorizes payment to Plaintiffs, nor is it the employee benefit plan which prescribes the amount of reimbursement for various medical goods and services which Plaintiffs provide to Defendants' members. Rather, the Provider Agreement is the document that sets forth the relevant provisions regarding payment to Plaintiffs. Plaintiffs' claims do not rest upon the terms of the various employee benefit plans. Mere reference to employee benefit plans in the Provider Agreement, is not sufficient to convert the health care provider's claim to a claim for a benefit under the employee benefit plan." See <u>Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.</u>, 187 F.3d at 1045 (9th Cir. 1999.)

In <u>Anesthesia Care Associates Medical Group, Inc.</u>, 187 F.3d at 1050, Blue Cross contended that the providers right to reimbursement was dependent upon the assignment of the right to payment for benefits for medical services from their patients, some of whom were beneficiaries of ERISA covered health plans, and therefore, the providers' claims were for benefits under the terms of an ERISA benefit plan, falling within the civil enforcement provision of ERISA § 502, (29 U.S.C. § 1132 (a)(1)(B)). The 9th Circuit held that providers' claims which arise from the terms of their provider agreements, and could not be asserted by their patient assignors are not claims for benefits under the terms of ERISA plans, and hence, do not fall within § 502. <u>Id</u>. at 1050. The Court reasoned that:

> "The providers and Blue Cross have executed provider agreements, and it is the terms of the provider agreements that providers contend Blue

Cross has breached. Indeed, the providers are asserting contractual breaches and related violations of the implied duty of good faith and fair dealing, that their patient-assignors could not assert: the patients simply are not parties to the provider agreements between the providers and Blue Cross. The dispute here is not over the right of payment, which might be said to depend on patient's assignments to the providers, but the amount, or level, of payment, which depends on the terms of the provider agreements...in view of the fact that, although beneficiaries of ERISA-covered plans have assigned their rights to reimbursement to the providers, the providers are asserting state law claims arising out of separate agreements for the provision of goods and services. We find no basis to conclude that the mere fact of assignment converts the providers' claims into claims to recover benefits under the terms of an ERISA plan. Accordingly, we agree with the District Court that the providers' claims do not fall within ERISA's enforcement." Id. at 1052.

It is imperative that this Court distinguish between claims brought on behalf of beneficiaries for the recovery of a benefit under a plan, and claims brought by third parties to enforce separate contractual obligations. Like in the case of <u>Anesthesia Care Associates Medical Group, Inc.</u>, the disputed issue in the instant case is not the right of payment, rather the "amount" or "level" of payment. The amount or level of payment is determined by the terms of the Provider Agreement. In order to determine the validity of Plaintiffs' claims, the Provider Agreements, not the employee benefit plans, must be interpreted.

The 9th Circuit explained that, "where the meaning of a term in the plan is not subject to dispute, the mere fact that the plan may be consulted in the course of litigating a state law claim, does not require that the claim be extinguished by ERISA's enforcement provisions." Id. at 1051. In the instant case, the plan need not be interpreted in order to ascertain the amount of payment which is due for the medical service provided by Plaintiffs.

Additionally, Plaintiffs are pursuing rights which could not have been pursued by Defendants' members, hence it is impossible to construe Plaintiffs' action as a claim by a participant or beneficiary for a "benefit due under an employee benefit plan."

Under the plain language of the provider agreements, Defendants' members are specifically foreclosed from bringing an action to enforce the terms of the Provider Agreement. The relevant provision in the Provider Agreement states, in pertinent part:

**20. Relationships**

…This agreement is not intended for the benefit of any third parties…

The explicit contractual language of the Provider Agreements deem Plaintiffs the only beneficiaries thereunder. Therefore, Defendants' members could not seek enforcement of the Plaintiffs' rights to payment thereunder.

### C. *Plaintiffs chose to pursue claims arising out of breaches of the Provider Agreement.*

Plaintiffs are the masters of their own Complaint, and as such they have chosen to pursue causes of action arising out of Defendants' breaches of the Provider Agreement. Plaintiffs do not state an ERISA claim on the face of their Complaint, nor are they pursuing any claims which are equivalent to ERISA's civil enforcement action. Plaintiffs are not suing as "beneficiaries or participants" of a plan, nor are they suing to

16

recover benefits due under the terms of an employee benefit plan. Plaintiffs are not suing on behalf of the plan beneficiaries/members, nor or they seeking recovery benefits due to the beneficiaries/members. Plaintiffs are seeking recovery of payments that Defendants are obligated to pay pursuant to the Provider Agreements

This case is not about the administration of an employee benefit plan, the rights of plan members, or money that the Defendants may owe plan members. This lawsuit seeks recovery for Defendants' breach of Provider Agreements without regard to Defendants' conduct towards its plan members or the administration of its various plans.

"The party who brings the suit is master to decide what law he will rely upon." Franchise Tax Board v. Construction Laborers' Vacation Trust, 463 U.S. 1, 12 (1983). The "well pleaded" complaint rule generally provides that the Plaintiff is the master of his complaint, and the fact that the wrong asserted could be addressed under either state or federal law does not diminish the plaintiff's right to choose a state law cause of action. Id. In the instant action, Plaintiffs have chosen to pursue claims arising out of Defendants' alleged actions in violation of the Provider Agreements. The Provider Agreements and conduct at issue are not properly preempted by ERISA, because the contracts are not part of an ERISA-governed employee benefit plan. Plaintiffs need not plead every cause of action that they have against a defendant. Plaintiffs are free to select which claims they wish to pursue. In the instant action, Plaintiffs have chosen to pursue state common law and statutory causes of action.

### D. Congress did not intend ERISA to preempt third party contract claims.

Nowhere in ERISA or its legislative history is there an indication that third party claims are encompassed within ERISA's preemptive scope. Congress had the opportunity to add such a provision, or at a minimum, hint at such a provision in either the explicit statutory language or legislative history. Absent any indication that third party claims should be preempted by ERISA, other courts have determined that ERISA's preemptive scope does not extend to such claims. Plaintiffs suggest that such rulings are consistent with ERISA and a public policy which encourages respect for contracts. In the instant action, this Court should deem the third party claims brought by Plaintiffs outside of ERISA's preemptive scope.

The "ultimate touchstone" in a preemption analysis is the Congressional purpose in enacting the federal statute. Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 19, 107 S. Ct. 2211, 2221, 96 L. Ed. 2d 1 (1987). Congress set forth in its findings and declaration of policy 29 U.S.C. § 1001 (b):

> "It is hereby declared to be the policy of this chapter to protect interstate commerce and the interest of participants in employee benefit plans and their beneficiaries by requiring the disclosure and reporting to participants and beneficiaries, the financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the federal courts."

Employers and employees receive many protections of ERISA in exchange for certain rights to sue under federal and state laws. The injustices of ERISA are perceived to be more than compensated for by the general security provided by ERISA. See Williams v. Caterpillar, Inc., 720 F. Supp. 148, 152 (N.D. Cal. 1989). Referring to

<u>Williams v. Caterpillar</u>, the court in <u>Memorial Hospital Sys. v. Northbrook Life Insurance Co.</u>, 904 F.2d 236, 249-50 (5th Cir. 1990) stated:

> "Simply put, Memorial Hospital and the countless other healthcare providers in this country were not a party to this bargain. At least, in this Circuit, a health care provider does not even have independent standing to seek redress under ERISA. See <u>Herman Hospital</u> 845 F.2d at 1290. We cannot believe that Congress intended the preemptive scope of ERISA to shield welfare plan fiduciaries from the consequences of their acts towards non-ERISA healthcare providers when a cause of action based on such conduct would not relate to the terms or conditions of a welfare plan, nor affect - - or affect only tangentially - - the ongoing administration of the plan.

## IV. CONCLUSION

Nowhere in ERISA's explicit statutory language or legislative history is there an indication that Congress intended ERISA's preemptive scope to cover claims based on independent provider agreements. The United States Supreme Court has found a distinction between obligations that insurance companies enter into with their insureds and those which the insurance companies enter into with third parties. <u>Group Life & Health Insurance Company, etc. et al. V. Royal Drug Company, etc., et al.</u>, 440 U.S. 205, 99 S.Ct. 1067 (1979). Courts in other circuits have recognized the independence of Provider Agreements, and have refused to extend ERISA's preemptive reach to encompass such agreements. <u>Pritt v. Blue Cross and Blue Shield of West Virginia, Inc.</u>, 699 F.Supp. 81 (S.D.W.Va. 1988)

Plaintiffs are not seeking to recover a plan benefit, rather they are independent third parties seeking to enforce contractual obligations which Defendants have entered into pursuant to separate independent contracts for the provision of medical goods and services. Therefore, the causes of action which they assert are not equivalent to ERISA's civil enforcement provision, ERISA 502, (29 U.S.C. § 1132(a)(1)(B)), and

removal of this action to federal court is improper, because no federal question jurisdiction exists. This action must be remanded to state court to be heard on Plaintiffs' eight (8) state common law and statutory causes of action.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 15th day of March, 2000 to:

Peter A. Sachs, Esq. , Jones, Foster, Johnston & Stubbs, P.A.
Attorneys for Defendants
505 South Flagler Drive, Suite 1100
P. O. Box 3475
West Palm Beach, Fl 33402-3475
(561) 659-3000

O'Melveny & Myers LLP, Of counsel for Defendants
555 13th Street, N. W., Suite 500 West
Washington, D. C. 20064
(202) 383-5300

    KRUPNICK, CAMPBELL, MALONE, ROSELLI,
    BUSER, SLAMA, HANCOCK, McNELIS
    LIBERMAN & McKEE, P.A.
    Attorney for Plaintiffs
    700 Southeast Third Avenue
    Courthouse Law Plaza, Suite 100
    Fort Lauderdale, Florida 33316
    (954) 763-8181

BY: _____
    WALTER G. CAMPBELL, JR., ESQUIRE
    Florida Bar No.: 161009