

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**
Case No. 00-6217-CIV-Graham
Magistrate Judge Turnoff

HAROLD SAMUEL LANDA, M.D.
d/b/a PULMONARY AND INTERNAL
MEDICINE CONSULTANTS, P.A.
and BROWARD COUNTY MEDICAL
ASSOCIATION,

        Plaintiffs,

    v.

HUMANA MEDICAL PLAN, INC.,
a Florida corporation;
HUMANA HEALTH PLAN OF FLORIDA,
INC., a Florida Corporation; and
HUMANA HEALTH INSURANCE COMPANY
OF FLORIDA, INC., a Florida corporation,

        Defendants.
_____/

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND**

Plaintiffs' Motion to Remand evinces a basic misunderstanding of complete preemption –

the controlling doctrine that requires this matter to be heard in federal court. The overarching

theme of plaintiffs' remand request is that they "are the masters of their own complaint" (Pl. Br.

at 16), and that their decision to seek relief solely under state law ends the jurisdictional inquiry.

But even though plaintiffs' "complaint purports to rely exclusively on state law, [they] cannot

avoid federal jurisdiction if [their] allegations involve an area of law that federal legislation has

preempted." *Hall v. Blue Cross / Blue Shield of Alabama*, 134 F.3d 1063, 1065 (11th Cir. 1998).

As the Eleventh Circuit has recognized, "[w]hen Congress comprehensively occupies a field of



law, 'any civil complaint raising this select group of claims is necessarily federal in character'
and thus furnishes subject-matter jurisdiction . . . ." *Butero v. Royal Maccabees Life Ins. Co.*,
174 F.3d 1207, 1211-12 (11th Cir. 1999) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S.
58, 63-64 (1987)).

Here, plaintiffs' First Amended Complaint implicates two areas of law that Congress has
made subject to exclusive federal jurisdiction. *First*, defendants' challenged practice of
reviewing and correcting "CPT codes" – the codes physicians use to describe particular medical
procedures for which they seek reimbursement – is clearly remediable through an ERISA claim
for benefits to the extent that any re-coded claims involved patients insured through ERISA
plans. *See, e.g., Healthcare America Plans, Inc. v. Bossemeyer*, 953 F. Supp. 1176, 1180 (D.
Kan. 1996) (challenge to insurer's review of physician's CPT codes brought under Section 502
of ERISA). Here, at least three of the patients as to whom defendants have re-coded Dr. Landa's
claims for reimbursement receive their health benefits through ERISA-governed employee
welfare benefit plans. (*See* Section I.A *infra*) Plaintiffs' attack on alleged "downcoding"
therefore necessarily relates to an ERISA plan and is subject to federal jurisdiction. Contrary to
plaintiffs' unsupported assertion that "[t]here is a presumption against ERISA-preemption" (Pl.
Br. at 4) – for which they cite a Kentucky decision that actually *approved* an ERISA-based
removal – the Eleventh Circuit has repeatedly observed that the "Supreme Court has *broadly
interpreted* the phrase 'relate to' in ERISA's preemption clause . . . ." *Hall*, 134 F.3d at 1065
(emphasis added) (affirming district court's denial of plaintiff's remand motion); *see also
Franklin v. QHG of Gadsden, Inc.*, 127 F.3d 1024, 1028 (11th Cir. 1997) (affirming district
court's denial of plaintiff's remand motion and noting that the "Supreme Court has given an

*expansive interpretation* to the term 'relate to'") (emphasis added).  Under the controlling

Eleventh Circuit standard, there is no question that plaintiffs' purported state-law claims are

subject to complete ERISA preemption and, therefore, subject to federal jurisdiction.

    ***Second***, because two of the patients as to whom Dr. Landa's reimbursement claims have

been re-coded receive their health benefits through a Medicare health maintenance organization

(*see* Section II.A *infra*), plaintiffs' allegations of "downcoding" necessarily fall within the

exclusive federal Medicare remedial framework and are, for that independent reason, subject to

federal jurisdiction.  As the Eleventh Circuit recently held, a carefully crafted administrative

process, followed by limited judicial review exclusively in federal court – ***not***, as plaintiffs

suggest, a proceeding in state court – "is the sole avenue for judicial review for all claims for

benefits 'arising under' the Medicare Act." *American Academy of Dermatology v. U.S. Dep't of

Health & Humana Servs.*, 118 F.3d 1495, 1497 (11th Cir. 1997).

    Plaintiffs apparently hope that, merely because they have selectively chosen to plead

state-law claims and because plaintiffs traditionally are deemed to be the "masters of their

complaint," the Court will remand this action to state court.  Controlling Eleventh Circuit law

does not permit this result.  Plaintiffs' complaint raises ERISA and Medicare issues as to which

federal law occupies the field.  Plaintiffs' remand motion therefore must be denied.

**BACKGROUND**

    Plaintiffs originally filed this action in state court, alleging that defendants are

administrators and insurers of health insurance plans, and that defendants have unlawfully re-

coded certain physician claims for payment in such a way as to limit the payment of benefits

under such plans.  According to plaintiffs, defendants systematically review the CPT codes used

3

by physicians to describe the medical procedures for which they seek reimbursement; request documentation of the procedures in certain circumstances; and re-code reimbursement requests when their original codes cannot be documented. Plaintiffs' complaint asserts that defendants' practices should be declared unlawful and that plaintiffs should receive damages for the allegedly unlawful re-coding of such claims for payment. While plaintiffs remain silent on the matter, defendants' records show that at least three of Dr. Landa's re-coded claims relate to patients insured through ERISA plans, while two of his re-coded claims relate to Medicare beneficiaries. (*See* Declaration of Ernestine Bevel ("Bevel Decl."), ¶¶ 2-3 (attached at Tab 1).) Defendants therefore removed this action to federal court on the basis of the complete preemption doctrine.

The particulars of plaintiffs' case are straightforward. Plaintiffs – a physician bringing suit on his own behalf and the Broward County Medical Association suing as the representative of its member physicians – allege that they are contractually obligated to provide services to patients insured by defendants. (Compl. ¶ 14.) As part of their agreement with defendants, plaintiffs "agreed not to bill the 'HUMANA' insured patients." (*Id.* ¶ 17.) Instead, plaintiffs specifically agreed to "accept assignment of benefits made by MEMBERS, as payment in full." (Provider Agreement ("Prov. Agmt.") ¶ 6 (attached to Memorandum in Support of Removal at Tab 1).) The Provider Agreement thus places plaintiffs in the shoes of ERISA beneficiaries, as assignees of rights under their patients' ERISA plans. Plaintiffs' obligation to provide medical services to defendants' members, and plaintiffs' related right to payment, does not flow exclusively (or even primarily) from the Provider Agreement itself; on the contrary, the Provider Agreement makes clear that plaintiffs' rights and responsibilities flow from "contracts issued or, administered by HUMANA or other third party payors which HUMANA has contracted with,"

4

and specifically those "health care benefits contracts . . . designated by HUMANA" – in other words, from either the relevant ERISA plan or the relevant Medicare program.  (*Id.* ¶ 2.)

Plaintiffs' essential complaint is that defendants failed to pay for services required by the members' contracts, including those contracts covered by ERISA or Medicare regulations. Plaintiffs press this complaint through eight state-law claims: a claim for declaratory relief under Fla. Rev. Stat. § 641.3901 (Compl. Count I); a claim for damages under Fla. Rev. Stat. § 641.3901 (Compl. Count II); a claim for declaratory relief under Fla. Rev. Stat. § 501.204 (Compl. Count III); a claim for damages under Fla. Rev. Stat. § 501.204 (Count IV); a common-law conspiracy claim for actual damages (Compl. Count V); a common-law fraud claim for actual damages (Compl. Count VI); a breach of contract claim seeking damages (Compl. Count VII); and a claim for unjust enrichment (Compl. Count VIII).  Plaintiffs' claims are inextricably linked to defendants' alleged acts in administering claims for health insurance benefits under group health plans, including ERISA and Medicare plans.  All eight causes of action seek to vindicate rights to health insurance benefits that are defined by ERISA plans or Medicare regulations and subject to the exclusive remedies provided under ERISA or Medicare.  Plaintiffs' motion to remand this action to state court must be denied.

ARGUMENT

This action was properly removed to federal court under 28 U.S.C. § 1441 because it is subject to the "original jurisdiction" of the federal district court.  Here, the original jurisdiction of the Court is founded on federal question jurisdiction.  *See* 28 U.S.C. § 1331.  As a general rule, federal question jurisdiction is governed by the well-pleaded complaint rule, which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's

properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). The

doctrine of complete preemption, however, is an exception to this general rule. Notwithstanding

a plaintiff's election to assert claims arising solely under state law, a federal court has jurisdiction

where Congress has "so completely pre-empt[ed] a particular area that any civil complaint

raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co.*

*v. Taylor*, 481 U.S. 58, 63-64 (1987). In such cases, "courts are required to recharacterize the

claim as one arising under federal law for purposes of determining removal jurisdiction" even if

the complaint purports to assert only state law claims. *Engelhardt v. Paul Revere Life Ins. Co.*,

139 F.3d 1346, 1353 (11th Cir. 1998) (vacating district court's order remanding case to state

court).

      The federal laws requiring preemption here are ERISA and the Medicare Act. When

ERISA is cited as the jurisdictional basis for removal, as it is here, complete preemption will be

found to exist where the legal rights plaintiffs seek to vindicate fall within ERISA's preemption

provision, 29 U.S.C. § 1144, and are redressable under ERISA's civil enforcement provision, 29

U.S.C. § 1132. *See Metropolitan Life Ins. Co.*, 481 U.S. at 64-67 (complete preemption exists

because claim related to ERISA plan and was remediable under ERISA § 502); *Butero*, 174 F.3d

at 1212 (doctrine of complete ERISA preemption applies "when the plaintiff is seeking relief that

is available under 29 U.S.C. § 1132(a)") (internal quotations omitted). Moreover, when a

plaintiff asserts any claim that is "inextricably intertwined" with claims for the payment of

Medicare benefits, the sole avenue for judicial review of that claim is in the federal courts,

subject to the strictures of 42 U.S.C. § 405(g). *See Heckler v. Ringer*, 466 U.S. 602, 615, 624

(1984). Plaintiffs' allegations here relate to benefit claims covered by both ERISA and

Medicare, giving this Court subject matter jurisdiction over this action.

## I.    THIS COURT HAS JURISDICTION OVER THIS ACTION UNDER THE DOCTRINE OF COMPLETE ERISA PREEMPTION.

### A.    PLAINTIFFS' RE-CODED REIMBURSEMENT CLAIMS INCLUDE CLAIMS ARISING FROM THE TREATMENT OF ERISA BENEFICIARIES.

Plaintiffs' opening argument – that "there is no record evidence that any of Dr. Landa's patients whose bills were downcoded by Humana are participants or beneficiaries of an ERISA plan" (Pl. Br. at 7) – strains credulity, given that plaintiffs themselves possess the information necessary to determine which re-coded claims relate to ERISA beneficiaries.  Defendants' records show that three of Dr. Landa's re-coded claims relate to ERISA beneficiaries: claims relating to an insured who receives health benefits through an employee benefit plan sponsored by her employer Helen Homes; claims relating to an insured who receives health benefits through an employee benefit  plan sponsored by his employer Interdiesel North America; and claims relating to an insured who receives health benefits through an employee benefit plan sponsored by his employer Gunther Motor Company.  (*See* Bevel Decl. ¶ 2.)  Moreover, while defendants are unable to identify all the members of the Broward County Medical Association, plaintiffs cannot seriously dispute that at least some of the Broward County physicians the Association purports to represent in this action treat patients insured through ERISA plans.  After all, "nearly 80% of the workers in this country" receive their health care benefits through plans subject to ERISA.  *See* 145 Cong. Rec. H8155-05 (daily ed., Sept. 14, 1999) (statement of Rep. Knollenberg).

In short, notwithstanding plaintiffs' efforts to obfuscate facts of which they themselves are surely aware, it is clear that some of the coding decisions at the heart of plaintiffs' complaint

involve ERISA beneficiaries.

**B.    ERISA COMPLETELY PREEMPTS THE STATE-LAW CLAIMS PLAINTIFFS HAVE SELECTIVELY CHOSEN TO PLEAD.**

1.    **Plaintiffs' "Choice" Of State Law Claims Is Jurisdictionally Irrelevant.**

Plaintiffs believe this action should be remanded because they "*chose* to pursue claims arising out of breaches of the Provider Agreement" rather than to "pursu[e] any claims which are equivalent to ERISA's civil enforcement section." (Pl. Br. at 16.)  But the doctrine of complete ERISA preemption does not allow plaintiffs this choice.  *See Hall*, 134 F.3d at 1065 (state-law claims selected by plaintiff are automatically "converted into federal claims" if they relate to ERISA plan).  Complete preemption exists because Congress has determined that certain areas of law – in this case employee welfare benefits plans regulated by ERISA – so demand uniform interpretation that the normal deference given to plaintiff as "master of the complaint" must give way.  *See Franklin*, 127 F.3d at 1027.   For any cause of action that *could have* been brought under ERISA, "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court." *Metropolitan Life*, 481 U.S. at 66.

Notwithstanding plaintiffs' purported "choice" to avoid ERISA claims, Eleventh Circuit precedent holds that they cannot avoid federal jurisdiction by leaving out a few key words in their complaint.  In *Franklin*, for example, the plaintiff sued her employer on a variety of state-law theories when the employer repudiated a promise it made to her in connection with her decision to leave her previous job – namely, that it would guarantee certain home health care services for the plaintiffs' husband.  The defendant removed the case to federal court, asserting

that the plaintiffs' state-law claims were completely preempted by ERISA.  Moving to remand,

the plaintiff in that case – like plaintiffs here –

> attempted to avoid the complete preemption doctrine by characterizing the
> complaint as one seeking damages for fraud in the inducement,
> misrepresentation, and deceit.  They did not allege that they are entitled to
> benefits pursuant to [the employer's] welfare benefits plan.  They maintain
> that their state law tort claims are based solely upon the tortious conduct in
> [the employer's] fraudulently inducing [the plaintiff] to accept its offer of
> employment."

*Franklin*, 127 F.3d at 1028.  The Eleventh Circuit unanimously rejected this argument.

According to the Eleventh Circuit, the mere fact that "a determination of the merits of appellants'

state law claims will require a court to compare the benefits available under the ERISA plans"

sponsored by the plaintiff's employer – even if the specific agreement on which the plaintiff sued

was an agreement separate from any ERISA plan – was enough to require that the case be heard

in federal court.  This case is controlled by *Franklin*, and plaintiffs' motion to remand therefore

must be denied.

### 2.   Federal Jurisdiction Is Proper Because Plaintiffs' Claims Clearly "Relate To" One Or More ERISA Plans.

A claim based on state law need only have a "connection with" an ERISA plan in order to

"relate to" it for jurisdictional purposes. *District of Columbia v. Greater Wash. Bd. of Trade*,

506 U.S. 125, 129 (1992).  Plaintiffs' attempt to avoid ERISA's expansive preemption by

describing the Provider Agreement as "not part of an ERISA-governed employee benefit plan,"

(Pl. Br. at 17) misses the mark – both factually and legally.

As a *factual* matter, the copy of the Provider Agreement attached to plaintiffs' complaint

demonstrates that plaintiffs' obligations and rights flow, in the first instance, from the ERISA

plans that define the scope of health insurance benefits. (*See* Prov. Agmt ¶ 2 (Provider

Agreement "applies only to those health care benefits contracts and to those MEMBERS

designated by HUMANA"; "conditions governing PHYSICIAN'S . . . service to designed

covered individuals ('MEMBERS') by contracts issued or, administered by HUMANA or other

third party payors which HUMANA has contracted with").) Moreover, the Provider Agreement

itself is central to defendants' role as health plan administrator. It is the vehicle through which

the assignment of ERISA plan benefits (and plaintiffs' related right to payment) occurs. (*See*

Prov. Agmt ¶ 6 ("PHYSICIAN agrees to accept assignment of benefits made by MEMBERS, as

payment in full").)[1]

As a *legal* matter, ERISA contains an explicit preemption provision of remarkable

breadth. Under this provision, ERISA "shall supersede any and all State laws insofar as they

may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). The

Supreme Court and the courts of this Circuit have consistently construed this provision broadly,

recognizing the breadth of preemption. *See, e.g., Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-

46 (1987) ("the express pre-emption provisions of ERISA are deliberately expansive"); *FMC

Corp. v. Holliday*, 498 U.S. 52, 58 (1990) (ERISA preemption is "conspicuous for its breadth");

*Hall*, 134 F.3d at 1065 (the "Supreme Court has broadly interpreted the phrase 'relate to' in

ERISA's preemption clause").

---

[1]    The Provider Agreement is far from independent of the underlying ERISA plans, which define the scope of health benefits plaintiffs are obligated to provide. In the first instance, it is the health plan members who owe plaintiffs for the medical services they have provided. To the extent allowed under the relevant ERISA plans, plan members then would be entitled to reimbursement for the cost of these services. The Provider Agreement simply shortcuts this unnecessarily complex scheme of payment. It allows defendants to pay the health care benefit directly to plaintiffs – making clear that the right plaintiffs necessarily are seeking to vindicate here is a right to benefits under an ERISA plan.

Indeed, the very case plaintiffs cite to show a presumption against ERISA-based removal demonstrates that removal is proper in this case. In *Ward v. Alternative Health Delivery Sys., Inc.*, 55 F. Supp. 2d 694 (W.D. Ky. 1999) (cited in Pl. Br. at 4), the plaintiff, who had provided chiropractic services to members of the defendants' health maintenance organization, filed suit alleging that the defendants did not pay her the full allowable charge for treatment of the HMO members. *Ward*, 55 F. Supp. 2d at 696. The plaintiff's complaint alleged state law causes of action strikingly similar to those at issue here: breach of contract, violation of Ky. Rev. Stat. § 304.17A0171, unjust enrichment, breach of implied covenant of good faith and fair dealing, a declaration of rights, and violation of Ky. Rev. Stat. § 367.175. Ruling that removal was proper, the court held that such "state law claims ***necessarily relate to*** an employee benefit plan since any recovery would depend on whether the rendered services were initially covered under the employees' health plans, and whether Plaintiff has already been paid some amount for treating these covered participants." *Ward,* 55 F. Supp. 2d at 699 (emphasis added).[2] The Court also found that plaintiff's statutory cause of action pursuant to Ky. Rev. Stat. § 304.17A-171 provided "another ground to trigger ERISA preemption as it too is sufficiently 'connected with' an employee benefit plan." *Id.*

The Eleventh Circuit's decision in *Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Alabama*, 41 F.3d 1476 (11th Cir. 1995), further underscores the propriety of removal here. In *Florence Nightingale*, the plaintiff providing nursing services to the

---

[2]      *Ward*'s broad interpretation of "relate to" is consistent with Eleventh Circuit precedent, under which "any state law claim having a connection with or reference to an employee benefits plan" is completely preempted and subject to federal jurisdiction. *See Hall*, 134 F.3d at 1065. Thus, the fact that Dr. Landa's Provider Agreement specifically refers to and incorporates "health care benefits contracts" that are in many cases governed by ERISA is sufficient to establish subject matter jurisdiction.

defendant's insured, whose ERISA-governed health benefits plan provided that nursing services were a covered benefit to the extent medically necessary. As part of its general cost-containment practices, the defendant determined that certain services provided by the plaintiff to the insured were not medically necessary, and therefore declined to reimburse the plaintiff for such services. The plaintiff – a health care provider like plaintiffs here – filed suit in state court, and the defendant removed the case to federal court. *See id.* at 1480. The Eleventh Circuit found no reason to question the existence of subject matter jurisdiction, and proceeded to reach the merits of the case. *See id.*

*Florence Nightingale* is indistinguishable from this action. In both cases, a plaintiff health care provider rendered services to an insured whose health care benefits were provided under an ERISA plan. In both cases, the insurer's cost-containment practices (in *Florence Nightingale*, review of claims for medical necessity; here, coding reviews) resulted in after-the-fact limitations of benefits. Therefore, there is federal jurisdiction over this case under the doctrine of complete ERISA preemption, just as there was over the plaintiff's state-law claims in *Florence Nightingale*.

Against this mountain of authority, plaintiffs rely primarily on factually distinct cases from outside this jurisdiction. This reliance is misplaced. If anything, for example, the analysis in *Blue Cross of California v. Anesthesia Care Associates Medical Group*, 187 F.3d 1045 (9th Cir. 1999), demonstrates why removal *is* appropriate in this action. The court in *Anesthesia Care* proceeded from the broad premise that where a provider – such as plaintiffs here – seeks, "as an assignee, to recover reimbursement due to his assignors under the terms of [a] benefit plan," the

12

provider's claim is completely preempted by ERISA.[3] *Id.* at 1051. The court then held that in the narrow circumstance where a health insurer seeks to renege on payments provided under a fee schedule negotiated as part of a provider agreement, the provider's state-law breach of contract claim is not subject to complete ERISA preemption. *See id.* This action falls within the broad rule recognized in *Anesthesia Care*, not within the narrow exception permitted on the facts of that case. Here, plaintiffs do not allege that defendants have unilaterally changed the fee schedule under the Provider Agreement. Instead, plaintiffs allege that a variety of managed care cost-containment practices, including "downcoding" of reimbursement claims and other practices designed to control utilization of health care benefits under an employee benefit plan, have resulted in lower payments than plaintiffs believe are appropriate. Because this is a question about how defendants administer the level of benefits provided under the relevant ERISA plans, rather than a question about defendants' obligations under any Provider Agreement, it is clearly subject to ERISA. *Cf. Zuniga v. Blue Cross and Blue Shield of Mich.*, 52 F.3d 1395, 1402 (6th Cir. 1995) ("We agree with the district court that Zuniga's breach of contract claim necessitates an evaluation of an employee benefit plan, specifically how it selects preferred providers and its assessment of overutilization. Thus, that claim 'relates to' an employee benefit plan and is preempted by ERISA.").

    *Anesthesia Care* also belies plaintiffs' concern that removal here would preclude the possibility of legitimate non-ERISA contract claims brought by physicians against insurers. (*Cf.*

---

[3]     For this proposition, the Ninth Circuit relied on *Misic v. Building Service Employees Health and Welfare Trust*, 789 F.2d 1374 (9th Cir. 1986). In *Misic*, the Ninth Circuit held a provider's claim completely preempted by ERISA, and therefore subject to removal jurisdiction, on the same analysis defendants urge, in part, here: "Assignment of trust monies to health care providers results in precisely the benefit the trust is designed to provide and the statute is designed to protect." *Id.* at 1377.

Pl. Br. at 15 ("It is imperative that this Court distinguish between claims brought on behalf of beneficiaries for the recovery of a benefit under a plan, and claims brought by third parties to enforce separate contractual obligations.").) As the Ninth Circuit itself recognized, and as the courts of *this* Circuit have held, there are at least two different models of provider-insurer lawsuits: those in which the insurer, as contracting counterparty, allegedly fails to live up to the contractual obligations it undertook specifically with respect to the provider (as in *Anesthesia Care*) and those in which the insurer, as administrator of an ERISA plan, makes administrative decisions with respect to plan benefits that happen to affect provider compensation (as in this case). Nothing about defendants' removal of this action calls into question legitimate situations, like that in *Anesthesia Care*, in which providers present *bona fide* claims for breach of contract.[4]

There is no legitimate debate about the removability of this action on grounds of complete ERISA preemption. Plaintiffs' remand request combines an apparent lack of forthrightness as to the ERISA nature of several of Dr. Landa's re-coded claims, with a misleading discussion of the Eleventh Circuit standards for ERISA-based removal. This case was properly removed, and plaintiffs' remand motion must be denied.

---

[4]     The other cases cited by plaintiffs are simply inapposite. In *Lordmann Enterprises, Inc. v. Equicor Inc.*, 32 F.3d 1529 (11th Cir. 1994), no jurisdictional question was presented; on the contrary, the plaintiff specifically asserted an ERISA claim for benefits. *See id.* at 1531. Plaintiffs' reliance on *Variety Children's Hospital v. Blue Cross / Blue Shield of Florida*, 942 F. Supp. 562 (S.D. Fla. 1996) is even more puzzling. There, the plaintiff "conceded that her state law claims were preempted by ERISA," *id.* at 564, and the district court expressly so recognized as to her state-law breach of contract claim. Plaintiffs' citation to *Memorial Hospital Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 250 (5th Cir. 1990), grossly mischaracterizes the current state of Fifth Circuit law. In the later case of *Hermann Hospital v. MEBA Medical & Benefits Plan*, 959 F.2d 569 (5th Cir. 1992), the Fifth Circuit held that a health care provider's state-law claims "based upon the failure of the plan to pay benefits to which [the provider] was entitled . . . have a nexus with the ERISA plan and its benefits system" and are subject to complete preemption. *Id.* at 578. *Pritt v. Blue Cross and Blue Shield of W. Va. Inc.*, 699 F. Supp. 81 (S.D. W.Va. 1988), is no better. In that decision, which predates the Eleventh Circuit's decision in *Florence Nightingale*, the district court relied on a very narrow definition of the term "beneficiary" in determining – without citation to *any* authority – that the plaintiff provider's claims could not be construed as relating to ERISA. Subsequent case law in the Eleventh Circuit and elsewhere dictates that the *Pritt* decision can be given no precedential authority in this case.

14

## II.    THE FEDERAL MEDICARE STATUTE PROVIDES AN INDEPENDENT BASIS FOR REMOVAL OF THIS ACTION.

Plaintiffs' complaint is subject to exclusive federal jurisdiction for an additional, wholly independent reason: the record reflects that at least some of the payments that were re-coded under defendants' administrative practices were compensation for services provided to *Medicare* beneficiaries. Such claims are subject to the exclusive scheme of adjudication and judicial review created by the Medicare Act, under which all Medicare-related claims are first heard by the carrier and the Secretary of Health and Humana Services, and finally by the *federal* courts under deferential review standards.

### A.    PLAINTIFFS' CLAIMS FOR REIMBURSEMENT RELATE TO MEDICARE BENEFICIARIES.

Just as some of Dr. Landa's re-coded reimbursement claims involve ERISA beneficiaries, some of the claims at issue involve Medicare patients. Dr. Landa is a participating provider in the Medicare program, and two of his re-coded claims for reimbursement relate to Medicare insureds. (*See* Bevel Decl. ¶ 3.) And while defendants cannot readily muster evidence showing each instance in which a reimbursement claim submitted by any member of the Broward County Medical Association was re-coded, it can scarcely be doubted that some physicians in this South Florida community participate in the Medicare program, and that some of their re-coded reimbursement claims would involve claims arising from treatment of Medicare beneficiaries.

### B.    THE MEDICARE ACT PROVIDES FOR LIMITED JUDICIAL REVIEW OF PLAINTIFFS' MEDICARE-RELATED CLAIMS EXCLUSIVELY IN THE FEDERAL COURTS.

Because plaintiffs' allegations concern benefits under the federal Medicare program, plaintiffs' claims must be determined under the federal statutory scheme established for review

of Medicare-related claims by carriers, the Secretary of Health and Humana Services, and the federal district courts under the federal Medicare Act, 42 U.S.C. §§ 1395 *et seq.* "Congress provided elaborate review provisions to be used by parties dissatisfied with the initial disposition of their Medicare claims." *Bodimetric Health Servs., Inc. v. Aetna Life & Cas. Co.*, 903 F.2d 480, 483 (7th Cir. 1990). These review provisions are codified in two sections of the Social Security Act.[5] The first provision, 42 U.S.C. § 405(g), provides the basis for all judicial review of Medicare benefit claims. It states that judicial review of Medicare claims shall be available only after the Secretary of Health and Humana Services renders a final decision on the claim,[6] *and then only in a federal district court. See* 42 U.S.C. § 405(g). The second provision, 42 U.S.C. § 405(h), further restricts the availability of judicial review for Medicare-related claims. It states that "[n]o findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided." *Id.* It further states that no action shall be brought against "the United States, the Commissioner of Social Security, or any officer or employer thereof . . . under section 1331 or 1346 of title 28 to recover on any claim arising under this [subchapter]." *Id.*

The Supreme Court, reading these provisions in conjunction with one another, has held that 42 U.S.C. § 405(g) "is the sole avenue for judicial review of all 'claim[s] arising under' the Medicare Act." *Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984); *see also American Academy of Dermatology*, 118 F.3d at 1497. In language similar to that used in the complete ERISA

---

[5]     The Medicare Act expressly provides that both provisions are applicable to managed care providers such as defendants. *See* 42 U.S.C. §§ 1395ff, 1395ii.
[6]     Before Medicare claims reach the administrative mechanisms established within the Department of Health and Human Services, the claimant must first pursue the appropriate grievance procedures provided by the carrier. *See, e.g.*, 42 C.F.R. §§ 422.560 *et seq.*

preemption analysis, the Supreme Court has instructed courts to apply the term "arising under"

broadly to channel any claim that is "inextricably intertwined" with claims for the payment of

Medicare benefits into the exclusive Medicare dispute resolution process. *See Heckler*, 466 U.S.

at 615, 624; *Weinberger v. Salfi*, 422 U.S. 749, 760-61 (1975). Only claims found to be "wholly

collateral" to claims for Medicare benefits are exempt from the requirement that they be

adjudicated through the exclusive review scheme established by 42 U.S.C. §§ 405(g) and 405(h).

*See Heckler*, 466 U.S. at 615 ("It is of no importance that respondents here . . . sought only

declaratory and injunctive relief and not an actual award of benefits as well.").

    At least two Circuits with occasion to address this issue have relied on *Heckler* to bar

state law claims by providers that were fairly characterized as challenges to the amounts paid for

services provided to Medicare beneficiaries. *See Midland Psychiatric Assocs., Inc. v. United

States*, 145 F.3d 1000, 1005 (8th Cir. 1998) (Medicare provider's state law claim for tortious

interference with contract would entangle the court in redetermining a Medicare claims decision

and therefore "arose under" the Medicare Act); *Bodimetric Health Servs.*, 903 F.2d at 487. In

*Bodimetric*, plaintiffs asserted state-law claims against an insurer participating in the Medicare

program that were similar to those at issue here, including allegations of fraud, negligence,

breach of contract, breach of implied covenant or good faith and fair dealing and breach of

fiduciary duty. The court determined that such allegations were actually based on alleged

misconduct in processing Medicare claims for reimbursement. As such, the claims arose under

the Medicare Act and were required to be adjudicated in federal court pursuant to the Medicare

Act's exclusive dispute resolution process.

    These cases share something in common with this action: in each case the plaintiff

attempted to present claims for Medicare benefit reimbursement as state law causes of action. In each case, however, the reviewing court discerned the true nature of plaintiffs' claims, and held them to be governed by the exclusive review scheme established for claims arising under the Medicare Act. As the Seventh Circuit aptly stated:

> A party cannot avoid the Medicare Act's jurisdictional bar simply by styling its attack as a claim for collateral damages instead of a challenge to the underlying denial of benefits. If litigants who have been denied benefits could routinely obtain judicial review of these decisions by recharacterizing their claims under state and federal causes of action, the Medicare Act's goal of limited judicial review for a substantial number of claims would be severely undermined.

*Bodimetric Health Servs.*, 903 F.2d at 487. Plaintiffs' state-law claims in this case are intertwined with payments for Medicare benefits. They are therefore subject to exclusive federal jurisdiction.[7]

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to remand should be denied.

Respectfully submitted,

Peter A. Sachs
Florida Bar No. 349062
JONES, FOSTER, JOHNSTON & STUBBS, P.A.
505 South Flagler Drive, Suite 1100
West Palm Beach, Florida 33402-3475
(561) 659-3000

---

[7]      Of course, because this Court has proper jurisdiction over plaintiffs' Medicare-related claims, it may exercise supplemental jurisdiction over any non-Medicare-related claims pursuant to 28 U.S.C. § 1367. Thus, even if defendants' ERISA-based jurisdictional arguments are rejected, this Court would still have an independent jurisdictional basis to hear this case, and supplemental jurisdiction over any additional claims. Conversely, if the Court accepts defendants' submissions with respect to ERISA, this Court will have yet another independent jurisdictional basis to hear this case, with accompanying supplemental jurisdiction over any genuine state-law-based claims. The Eleventh Circuit has expressed a clear preference that state-law claims joined with or relating to claims subject to complete ERISA preemption be heard together in federal court. *See Butero*, 174 F.3d at 1215 ("Because Simply Fashion's claims were joined with suprepreempted (and therefore removable) claims, furthermore, the district court could properly retain jurisdiction over them. *See* 28 U.S.C. § 1441(c); *In re City of Mobile*, 75 F.3d 605, 608 (11th Cir. 1996).").

*Of counsel:*

O'MELVENY & MYERS LLP
555 13th Street, N.W.
Suite 500 West
Washington, D.C.  20004
(202) 383-5300

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail

to Brian D. Boyle, Esq., Brian P. Brooks, Esq., O'Melveny & Myers L.L.P., 555 13th Street, N.W.,

Washington, D.C. 20004; and Walter G. Campbell, Esquire, Krupnick, Campbell, Malone, Roselli,

Buser,  Slama, Hancock, McNelis, Liberman & McKee, P.A., 700 Southeast Third Avenue, Suite

100, Courthouse Law Plaza Fort Lauderdale, FL 33316 on March 31, 2000.

> JONES, FOSTER, JOHNSTON & STUBBS, P.A.
> Attorneys for Defendants
> 505 South Flagler Drive, Suite 1100
> Post Office Box 3475
> West Palm Beach, Florida 33402-3475
>
> By: _____
> Peter A. Sachs
> Florida Bar No. 349062

N:\PAS\20707-6\certofserv.wpd

20

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 00-6217-CIV-Graham
Magistrate Judge Turnoff

HAROLD SAMUEL LANDA, M.D. d/b/a
PULMONARY AND INTERNAL MEDICINE
CONSULTANTS, P.A. and BROWARD
COUNTY MEDICAL ASSOCIATION,

        Plaintiffs,

    v.

HUMANA MEDICAL PLAN, INC., a Florida
corporation; HUMANA HEALTH PLAN OF
FLORIDA, INC., A FLORIDA
CORPORATION; and HUMANA HEALTH
INSURANCE COMPANY OF FLORIDA, INC.,
a Florida corporation,

        Defendants.

_____/

## DECLARATION OF ERNESTINE BEVEL

I, Ernestine Bevel, do hereby declare and swear the following:

1.      I am currently employed by Humana Inc. ("Humana") as a supervisor in the

Critical Inquiry Department of the Jacksonville Service Center in Jacksonville, Florida. I have

held this position since approximately 1994. In the ordinary course of business, I supervise

employees who regularly work with Humana's Claims Administration System. In addition, I am

personally familiar with the Claims Administration System. The Claims Administration System

contains, among other things, information regarding reimbursement claims submitted to

Humana's affiliates by physicians.

2.     In connection with the above-captioned litigation, I directed that a search of the Claims Administration System be conducted to determine the nature of any reimbursement claims submitted by Dr. Harold Landa that were re-coded by a Humana affiliate. The results of this search show that Dr. Landa's re-coded reimbursement claims relate to his treatment of 16 patients. Of these 16 patients, three receive their health insurance coverage through employer-sponsored group health plans subject to the Employee Retirement Income Security Act: a woman employed by Helen Homes, Group #F2932; a man employed by Interdiesel North America, Group #J8401; and a man employed by Gunther Motor Company, Group #74452.

3.     The results show that Dr. Landa's re-coded reimbursement claims also involve two patients who receive their health care through a Medicare health maintenance organization, Group #90992.

I declare under penalty of perjury that the foregoing is true and correct.

Ernestine Y. Bevel

Executed on *March 29th*, 2000, at Jacksonville, Florida.

2